UNITED STATES of America,
Plaintiff-Appellee,

v.

Reginald JONES, Defendant-Appellant

No. 79–1119.

United States Court of Appeals,
Ninth Circuit.

Nov. 15, 1979.

Claudia A. Wilken, Wilken & Leverett, Oakland, Cal., for defendant-appellant.

Sanford Svetcov, Chief Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before PECK,* CARTER and TANG, Circuit Judges.

### JAMES M. CARTER, Circuit Judge:

Reginald Jones is appealing from his conviction for burglary on a government reservation. The conviction is based on 18 U.S.C. § 13 which provides that, in the absence of a federal statute prohibiting the specific acts charged, the federal government may prosecute a person who commits acts on a government reservation which violate the law of the state where the reservation is located. The state law relevant here is Cal.Penal Code § 459 defining the offenses of burglary and housebreaking. Jones having waived his right to a jury, the district court tried him solely on stipulated facts. He was convicted and sentenced to three years in the custody of the Attorney General.

Jones advances three grounds for the reversal of his conviction all of which relate to the district court's modification of its initial decision to suppress certain evidence. First, Jones argues that the government was not timely in its motion challenging the suppression order. Second, certain tangible evidence of the burglary was discovered because of a lead produced by an illegal search, and the evidence was thus, Jones contends, tainted and inadmissible. Third, he argues that he confessed only because confronted with the illegally seized evidence of the burglary. We find these contentions to be without merit and accordingly affirm.

## I. FACTS

On June 1, 1977, a residence on the Presidio in San Francisco was burglarized and several pieces of jewelry and a gun were reported missing. On July 13, 1977, Los Angeles police officers arrested appellant Reginald Jones suspecting him of an unrelated Los Angeles burglary. A state court subsequently found that this arrest was unlawful as lacking probable cause. In the course of the search incident to the arrest, the police officers found a motel key in Jones' possession. It was marked with the motel's name and a room number.

Without taking the key with them, the police went to the motel office where they learned that the room in question was registered to a Mr. Jack Bennett. They knocked on Bennett's door identifying themselves and informing him that they were investigating a Los Angeles burglary, the one for which Jones had been arrested. Bennett informed the officers that he and Jones shared the motel room. He consented to a search and informed the police that there was a gun in his travel bag. The serial number of this gun was later matched to that of the gun taken in the Presidio burglary.

Bennett then told the police that he had display cases of jewelry in his car, and he gave them his permission to search it. A few days later, some of the jewelry found in Bennett's car was identified as that stolen from the Presidio residence. Bennett did not himself participate in the Presidio burglary.

On July 18, 1977, while Jones was in custody in Los Angeles County Jail for the Los Angeles burglary for which he was illegally arrested, an F.B.I. agent interviewed him concerning the Presidio burglary. The agent confronted him with the gun found in his motel room indicating that the gun had been identified as the one taken from the residence in Presidio. At that time, Jones denied having stolen the gun. Nearly two months later, on September 12, 1977, a second F.B.I. agent came to interview Jones. Jones had, by this time, been convicted of the Los Angeles burglary and had been moved to the state facility at Chino. The agent advised Jones of his *Miranda* rights, and Jones signed a written waiver. The agent referred to the prior interview and also informed Jones that his fingerprints, taken in the Los Angeles arrest, had been matched to the fingerprints taken at the scene of the Presidio burglary. Jones then confessed to having committed that burglary.

---

* Hon. John W. Peck, Senior U. S. Circuit Judge, Sixth Circuit, sitting by designation.

## II. PROCEDURAL BACKGROUND

Trial was set to be conducted before the United States District Court in San Francisco. Jones filed a pretrial motion to suppress certain evidence and to obtain a free transcript of the state hearing in which the Los Angeles arrest had been found illegal. Together with his motion for a free transcript, Jones requested a continuance to allow him time to obtain it. The government informed Jones' counsel and the district court's law clerk that it agreed to the continuance and the request for the transcript. However, at a motion hearing on June 29, 1978, the district court denied the part of the motion relating to the continuance and transcript and, because the government was not prepared to oppose the suppression motion, the court ordered suppression of the gun, the jewelry, both of Jones' confessions and his fingerprints taken at the time of the arrest.

Twenty days later, on July 19, the government moved that the court reconsider its grant of the suppression motion. On July 31, the court heard and denied this reconsideration motion. On August 11, the government filed a notice of appeal from the June 29 grant of the suppression motion. The district court, on August 14, recommended to the government that it dismiss its appeal and make another motion for reconsideration. The government followed this recommendation moving on August 15 that the appeal be dismissed, and on August 17 that the district court, pursuant to Rule 36 of the Federal Rules of Criminal Procedure, set aside its prior order granting Jones' suppression motion. The district court concluded that it had lost jurisdiction when the appeal was docketed and declined to proceed until the court of appeals dismissed the appeal. After the court of appeals did this, the district court heard and granted the government's motion to set aside its previous suppression order.

Subsequently, an evidentiary hearing was held on the suppression motion. The court suppressed Jones' first statement to the F.B.I. while in Los Angeles County Jail as well as the fingerprints taken at the time of the illegal arrest. It found, however, that the gun, the jewelry, and Jones' second statement were admissible.

## III. ISSUES

1. Was the government's second motion challenging the suppression order untimely and thus not within the district court's jurisdiction to entertain?

2. Did the fruit of the poisonous tree doctrine require the suppression of the gun and the jewelry which the police discovered by following the lead produced by Jones' illegal arrest?

3. Was Jones' second confession inadmissible as the product of the illegal arrest and the confrontation with illegally seized evidence?

## IV. DISCUSSION

### A. *The Timeliness of the Government's Motion*

In requesting for a second time that the district court reconsider its suppression order, the government relied on Rule 36 of the Federal Rules of Criminal Procedure. However, as this court noted in *United States v. Marchese*, 341 F.2d 782, 788 (9th Cir. 1965), Rule 36 was intended to allow correction of clerical errors, not to allow reassessment of the merits of an earlier decision after the time for reconsideration or appeal had elapsed.[1] Although the government's motion on August 17 requesting that the district court vacate its suppression order was ostensibly based on Rule 36, its practical purpose and effect was to ask the district court to reconsider its ruling. The practical function of the government's motion rather than the way it was captioned should govern this court's determination of the motion's appropriateness. *See United States v. Dieter*, 429 U.S. 6, 8, 97 S.Ct. 18, 50 L.Ed.2d 8 (1976). Thus, we

---

1. There is no time limit on when the district court may invoke Rule 36 to correct clerical errors.

**390**

shall consider the government's Rule 36 motion as essentially a second motion for reconsideration.

No specific rule governs the timeliness of a motion for reconsideration or the effect which such a motion has on the finality of a trial court's order. The Supreme Court, however, has held that a motion for reconsideration is timely at least "when filed within the original period for review." *United States v. Healy*, 376 U.S. 75, 78, 84 S.Ct. 553, 555, 11 L.Ed.2d 527 (1964). Under 18 U.S.C. § 3731, the government had thirty days to appeal the trial court's suppression order of June 29. Thus, the government was timely with its first reconsideration motion on July 19. The Supreme Court has expressly held that the filing of a rehearing petition extends the time for appeal so that the thirty days begins to run from the time the rehearing petition is denied. *Id.*

■■■ Here, the district court denied the government's first motion for reconsideration on July 31. Consequently, the government's notice of appeal on August 11 was timely, and the district court's suppression order had not become final at the time the government made its second motion for reconsideration on August 17. As this court held in *United States v. Emens*, 565 F.2d 1142, 1144 (9th Cir. 1978), quoting from *Zimmern v. United States*, 298 U.S. 167, 169–70, 56 S.Ct. 706, 80 L.Ed. 1118 (1936), "[the District Court has] plenary power [within appeal time] to modify his judgment for error of fact or law or even revoke it altogether." Since the period for appeal had not elapsed, we hold that the district court acted within its power in inviting and entertaining the government's second request for reconsideration.[2]

■■■ This holding is not intended to suggest that a party can indefinitely extend the time for appeal by making repeated motions for reconsideration. Here, the government had taken a timely appeal from the suppression order, and the district court itself took the initiative to suggest withdrawal of the appeal and a second reconsideration request. It would be highly unfair to the government, which is itself entitled to a fair trial in a criminal case, *Swain v. Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), to deprive it of both appeal and reconsideration of the order merely because it followed the district court's suggestion about which avenue to pursue.

**B. Admissibility of the Gun and the Jewelry**

The government acknowledges that the Los Angeles police violated Jones' Fourth Amendment rights by arresting him without probable cause. The government also concedes that the police would not have gone to the motel room where the gun was found had they not found the motel key during the search incident to Jones' illegal arrest. Thus the issue is raised whether the gun and the jewelry were inadmissible as the fruit of the illegal arrest. For the following reasons, we conclude that they were not.

■■■ The law is well settled that a "but for" link between illegal police conduct and the controverted evidence is not in itself sufficient to dictate suppression. The Supreme Court, in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), made clear that the inquiry should not end with the finding of a causal link between the illegal conduct and the acquisition of evidence. Rather the court should determine whether the police obtained the evidence "by exploitation of the illegality."

**2.** Allowing the district court to reconsider its suppression order under these circumstances furthers the policy favoring judicial economy. The Supreme Court has indicated that it prefers reconsideration over appeal stating in *United States v. Dieter*, 429 U.S. 6, 8, 97 S.Ct. 18, 19, 50 L.Ed.2d 8 (1976): "[P]lenary consideration of an issue by an appellate court ordinarily requires more time than is required for disposition by a trial court of a petition for rehearing. The fact that appeals are now routed to the courts of appeals does not affect the wisdom of giving district courts the opportunity promptly to correct their own alleged errors." [citation omitted]

*Id.* at 488, 83 S.Ct. 407. In the present case, three factors are of primary importance in determining whether the gun and the jewelry were tainted by the illegal arrest and were therefore inadmissible. First, how directly did the arrest lead to the discovery of the evidence? Second, were there other events, independent of the arrest, which also contributed to the police's discovery? Finally, to what extent would suppression of the evidence further the exclusionary rule's purpose of deterring police misconduct?

In the present case, the only direct product of the illegal arrest was the motel key, and the only lead the motel key afforded the police was Jones' possible residence. At that time, the police had no reason to suspect Jones of the Presidio burglary. The key, therefore, gave the police no reason to search for the gun and jewelry stolen in that burglary. This court has held, in *Hoonsilapa v. Immigration and Naturalization Service,* 575 F.2d 735 (9th Cir. 1978), that "there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to . . . independent evidence." Id. at 738. We do not now extend this rule to an illegal arrest which only leads to discovery of a person's residence. However, our holding in *Hoonsilapa* illustrates that an illegally acquired lead may be so general and indirect that we will decline to find the subsequently discovered evidence to be tainted by the illegality.

Further lessening any taint was the voluntary consent by Jones' roommate Bennett to the police search of the motel room and the car. This court held, in *United States v. Williams,* 436 F.2d 1166 (9th Cir. 1970), that a statement volunteered by a suspect's neighbor was admissible even though it would not have been obtained but for the illegal arrest of the suspect. Because the neighbor's statement was unsolicited and entirely voluntary, we found that the con-

nection between the statement and the illegal arrest was so dissipated as to attenuate the taint. *Id.* at 1171. Here, the consent to the room search by Bennett was apparently voluntary,[3] and his mention of the jewelry in the car was totally unsolicited, the police being unaware at that time of the car's existence. Although we do not now hold that Bennett's consent was alone sufficient to render the evidence admissible, it is a significant factor especially when considered in the light of the weakness of the initial connection between the arrest and the discovery of the evidence.

Finally, applying the exclusionary rule under these circumstances would have little value in deterring police misconduct. It is crucial, in this regard, that the police were not looking for evidence of the Presidio burglary when they followed their illegally acquired lead to Jones' motel room. As this court stated in *United States v. Bacall,* 443 F.2d 1050, 1057 (9th Cir. 1971):

> [W]hen officers through serendipity discover evidence concerning a suspect whom they are unlawfully investigating in connection with another, different crime, the new evidence is not tainted where the officers discovered it only because their unlawful investigation fortuitously put them in a position to do so and where their unlawful investigative intent did not extend to the additional evidence.

We had previously set forth the rationale for this rule in *Allen v. Cupp,* 426 F.2d 756, 759 (9th Cir. 1970): "Deterrence can have its effect only when it can be said that an object of the illegal conduct was the securing of the evidence sought to be suppressed."

Consequently, because of the indirectness of the connection between the arrest and the evidence, the intervening voluntary consent of Bennett, and the absence of deterrent value, we hold that the district court was correct in refusing to suppress the gun and the jewelry.

---

**3.** Since Jones could not take advantage of police conduct which violated only Bennett's rights, the district court, in declining to suppress the gun and the jewelry, was not required to make a specific finding about whether Bennett's consent was voluntary. The facts, however, clearly suggest that it was.

C. *Admissibility of Jones' Second Confession*

Jones contends that the confession he made to an F.B.I. agent while he was in state prison after his conviction for the Los Angeles burglary should have been suppressed for three reasons: (1) the confession was the product of an illegal arrest; (2) it was the product of his first illegally obtained confession; and (3) it was the product of his being confronted with the fact that his illegally seized fingerprints matched those found at the burglary scene.

 The mere fact that Jones' confession was preceded by an illegal arrest and confession does not necessarily preclude its admissibility. A confession may be sufficiently voluntary to purge the taint of a prior illegality under the reasoning of *Wong Sun*. *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The Supreme Court in *Brown* suggested four factors to consider in determining whether this degree of voluntariness exists. In applying these four factors to the challenged confession, first, it is important that the F.B.I. agent gave Jones his *Miranda* warnings and that Jones signed a waiver. Second, nearly two months had elapsed between the first and second statements and an even greater time between the arrest and the second statement. Third, there were intervening events between the arrest and first confession and the controverted confession, i. e. Jones was tried and convicted for the Los Angeles burglary and moved from a county to a state jail during this intervening period. Fourth, there was no suggestion of coercive or willful misconduct on the part of either state or federal authorities. Thus, applying the criteria set out in *Brown v. Illinois*, we conclude that Jones' statement was sufficiently voluntary to be purged of the taint of the prior illegality.

Finally, we reject Jones' contention that the use of his illegally obtained fingerprints in inducing him to confess rendered his confession inadmissible. The authorities possessed other sets of Jones' fingerprints obtained legally both before and after his illegal arrest. Since the match-up could have been made with these other sets of fingerprints, the illegal seizure of his fingerprints at the arrest was not even the "but for" cause of his confession.

The judgment is affirmed.