**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark Allen SHEPHARD,
Defendant–Appellant.**

No. 92–30204.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1993.

Decided April 12, 1994.

As Amended April 21, 1994.

Wendy Holton, Helena, MT, for defendant-appellant.

Robert J. Brooks, Asst. U.S. Atty., Butte, MT, for plaintiff-appellee.

Before: CANBY, and REINHARDT, Circuit Judges, and TASHIMA, District Judge.*

Opinion by Judge REINHARDT.

REINHARDT, Circuit Judge:

The issue in this case is whether Montana law enforcement officers who arrest probationers for violating the terms of their probation must do so in accordance with Mont. Code Ann. § 46–23–1012. We hold that they must, and reverse Shephard's conviction.[1]

## I.

On July 7, 1989, an informant told Missoula County Sheriff Deputy Willis Hintz that Mark Allen Shephard, on probation for a state felony, was not complying with the condition of his probation that required him to attend regular meetings in Helena, Montana. He also told Hintz that Shephard had written some bad checks. Hintz informed Shephard's probation officer, who orally authorized Hintz to arrest Shephard.[2]

Hintz and another deputy went to the house where Shephard was staying, knocked at the door, and were told to come in. They opened the door, saw Shephard among a group of people in the living room, and asked him to step outside with them. Outside, they told him that he was under arrest for probation violation. Shephard asked Hintz to go back inside to retrieve his wallet for him. Leaving Shephard outside with the other deputy, Hintz entered the apartment. In Shephard's bedroom, Hintz saw the wallet and a Ruger .22 calibre revolver in plain view on a bedside table. Another man in the apartment told Hintz that the gun belonged to Shephard, and Hintz seized the gun. A later identification by the seller confirmed that Shephard was the owner.

Shephard was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the revolver and the identification on the ground that he had been arrested illegally, contending that Mont.Code Ann. § 46–23–1012 required that Hintz obtain either a court order or written authorization from a probation or parole officer to arrest him for a probation violation.[3] After a hearing, the

* The Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. Shephard additionally contends that his arrest was invalid because he was arrested at home not pursuant to a warrant. In view of our reversal on statutory grounds, we do not reach this issue.

2. After Shephard was arrested, Hintz executed a written authorization.

3. The statute provides:

    **46–23–1012. Arrest when violations of probation alleged.**
    (1) At any time during probation or suspension of sentence a court may issue a warrant for the arrest of the defendant for violation of any of the conditions of release or a notice to appear to answer to a charge of violation. Such notice shall be personally served upon the defendant. The warrant shall authorize all officers named therein to return such defendant to the custody of the court or to any suitable detention facility designated by the court.
    (2) Any probation and parole officer may arrest such defendant without a warrant or may deputize any other officer with power of arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of said probation and parole officer, violated the conditions of his release. Such written statement delivered with the defendant by the arresting officer to the official in charge of a county jail or other place of detention shall be sufficient warrant for the detention of the defendant. The probation and parole offi-

district court denied the motion. Shephard then entered a conditional guilty plea, reserving the right to appeal the denial of his motion. He was sentenced to time served (eight-and-a-half months) and three years of supervised release, and was released to a state detainer. This appeal follows.

## II.

### A.

■ We look to state law to determine the lawfulness of an arrest by a state officer for a state offense. *Ker v. California*, 374 U.S. 23, 37–38, 83 S.Ct. 1623, 1632, 10 L.Ed.2d 726 (1963) (plurality opinion);[4] *United States v. Mota*, 982 F.2d 1384, 1387 (9th Cir.1993) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979)).[5] Here, Shephard was arrested by state law enforcement officers for violating the conditions of his probation.[6] The propriety of his arrest is therefore a matter of state law.

■ Under Mont.Code Ann. § 46–23–1012, an arrest for probation violation may be made in one of two ways: 1) any probation or parole officer may make a warrant-

less arrest; or 2) any police officer[7] may make the arrest *if a parole or probation officer has given him or her written authority to do so.* It is undisputed that Shephard was arrested for violating probation, that he was arrested by a police officer, and that the police officer did not have written authority from Shephard's probation officer. Thus, it seems clear that Shephard's arrest was obtained in violation of § 46–23–1012.[8]

### B.

The government contends that, the unequivocal language of § 46–23–1012 notwithstanding, *State v. Burke*, 235 Mont. 165, 766 P.2d 254 (1988), establishes that a police officer may make an arrest for a probation violation without written authorization.[9] However, *Burke* concerns a search, not an arrest, of a probationer's person and house. It holds that a police officer may conduct a warrantless search of a probationer's home if a condition of probation requires the probationer to submit to such a search. 766 P.2d at 256–57. *See United States v. Wryn*, 952 F.2d 1122, 1125 (9th Cir.1991).

■ Like Shephard, the probationers in *Burke* were arrested for violating the terms

cer, after making an arrest, shall present to the detaining authorities a similar statement of the circumstances of violation.

(3) Provisions regarding release on bail of persons charged with crime shall be applicable to the defendants arrested under these provisions. Mont.Code Ann. § 46–23–1012.

**4.** In addition to the plurality, Chief Justice Warren and Justices Douglas, Goldberg, and Brennan adopted this holding. *See id.* at 62, 83 S.Ct. at 1644 (Brennan, J., dissenting in part).

**5.** Our conclusion holds only insofar as state law does not violate the Fourth Amendment. *Ker*, 374 U.S. at 37, 83 S.Ct. at 1632. Here, there is no contention that § 46–23–1012 violates the Fourth Amendment, and we find no such violation.

**6.** Under Montana law, an "offense" is "a crime for which a sentence of death or of imprisonment or a fine is authorized. Offenses are classified as felonies or misdemeanors." Mont.Code Ann. § 45–2–101(42). Probation violation is nowhere so classified, although a probationer may be arrested for allegedly violating the conditions of probation, Mont.Code Ann. § 46–23–1012, and the law requires that a hearing be held on the

matter, after which probation may be revoked, Mont.Code Ann. § 46–23–1013.

**7.** As noted above, the statute describes "any ... officer with power of arrest." *See supra* note 3. For convenience, we refer to such officers as police officers.

**8.** A search of Montana case law reveals very few cases that treat § 46–23–1012. Apparently, no probationer has sought to enforce its provisions. We find this particularly surprising since the statute seems to be honored in the breach. Shephard's probation officer had never heard of the statute or its contents and Deputy Hintz testified at Shephard's suppression hearing that it was "standard practice in the Missoula area" to arrest probationers for probation violations solely on an oral authorization from the probation officer.

**9.** The government contends that *State v. Plouffe*, 198 Mont. 379, 646 P.2d 533 (1982), also establishes that a probation officer may orally authorize a probationer's arrest. In *Plouffe*, however, the appellant was arrested after a written as well as an oral authorization was made. *Id.* at 534. The issue whether an oral authorization alone would have been sufficient was not raised.

of their probation, and, like Shephard, they were arrested, evidently in violation of § 46–23–1012, after their probation officer orally authorized a police officer to arrest them. However, unlike Shephard, the probationers in *Burke* did not contend that their arrest was illegal. Still less did they contend that it was illegal because the arresting officer did not comply with § 46–23–1012. In fact, the opinion does not mention the statute. Instead, the *Burke* probationers argued that the searches of their car and house were illegal. They based their contention on the view that the conditions of their probation were invalid under then-existing Montana case law. 766 P.2d at 255; *see State v. Fogarty,* 187 Mont. 393, 610 P.2d 140 (1980), *overruled by State v. Burke, supra.* The *Burke* court held that warrantless searches of probation violators' homes and vehicles

were proper if the violators' conditions of probation permitted such searches. It held nothing with regard to warrantless *arrests* of probation violators.[10] *Burke* is thus inapplicable.[11]

## III.

In the alternative, the government argues that its warrantless arrest of Shephard was proper under Mont.Code Ann. § 46–6–311, which permits such an arrest if authorities have probable cause to believe that the arrestee has committed an offense and exigencies do not permit the issuance of a warrant.[12] Assuming that Deputy Hintz had probable cause to arrest Shephard for violating the terms of his probation,[13] and assuming that probation violation is an offense,[14] we find no exigent circumstance.

**10.** Law enforcement officers may, of course, conduct a warrantless search incident to a lawful arrest. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). However, the arrest here was not lawful.

Furthermore, although the terms of Shephard's probation required him to submit to warrantless searches, the Ruger was not retrieved as the result of a search. Like the probationers in *Burke,* Shephard was required by the terms of his probation to submit to warrantless searches of "himself, his vehicle, and his residence ... by lawful authorities upon reasonable request of his probation officer." However, here the probation officer testified that he made no such request, directly or indirectly. Moreover, Deputy Hintz's actions did not constitute a "search." The undisputed testimony at Shephard's suppression hearing established that Deputy Hintz entered the apartment at Shephard's request, to retrieve his wallet—not to conduct a search. In any event, the government does not contend that a search was either authorized or conducted. Therefore, we cannot say that the Ruger revolver was seized as the result of a lawful search.

**11.** The government additionally contends that the liberty of probationers is restricted, and that therefore, under *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), their houses may be searched without a warrant if an officer merely has "reasonable grounds" to believe that contraband is present. However, this case concerns a warrantless arrest, not a warrantless search. *Griffin* is silent on the subject of warrantless arrests of probationers. Moreover, despite the fact that the Constitution permits such warrantless searches, the states are free to impose stricter standards. Here, Montana law requires a written authorization before a police

officer may arrest a probationer. Mont.Code Ann. § 46–23–1012.

**12.** The relevant portion of the provision states: **Basis for arrest without warrant.** (1) A peace officer may arrest a person when no warrant has been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing [sic] circumstances require immediate arrest.
Mont.Code Ann. § 46–6–311.

**13.** The government argues that a violation of probation establishes probable cause to detain the violator. *State v. Pease,* 233 Mont. 65, 758 P.2d 764, 767 (1988), *cert. denied,* 488 U.S. 1033, 109 S.Ct. 845, 102 L.Ed.2d 976 (1989). *Pease* does not, however, stand for the proposition that probation violation establishes probable cause for an arrest. Furthermore, the defendant in *Pease* admitted his violation. There was no question that he had contravened the terms of his probation. Here, by contrast, authorities had only a tip from an informant on which to rely. Shephard's violation, therefore, was only alleged, not admitted. It is not clear that an alleged violation establishes probable cause to detain or arrest a probationer. Finally, it is not clear whether the defendant in *Pease* was detained on written order of his probation officer, or by some other means.

**14.** *See supra* note 6. As noted above, Deputy Hintz was informed not only that Shephard had failed to attend the meetings required under the terms of his probation, but also that he had written some bad checks. However, neither Hintz nor any other witness at Shephard's suppression hearing testified that Shephard was arrested for any reason other than his probation violation. Nothing suggests that he was arrested

Exigent circumstances are "those circumstances that would cause a reasonable person to believe that ... prompt action [ ] was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir.1984) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *see also United States v. George*, 883 F.2d 1407, 1412 (9th Cir.1989). The government bears the "heavy burden" of showing the existence of exigent circumstances. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732 (1984). It can meet that burden only by "demonstrat[ing] specific and articulable facts to justify the finding of exigent circumstances." *United States v. Driver*, 776 F.2d 807, 810 (9th Cir.1985) (citing *Arkansas v. Sanders*, 442 U.S. 753, 759–60, 99 S.Ct. 2586, 2590–91, 61 L.Ed.2d 235 (1979)). In determining whether an exigency exists, "an important factor ... is the gravity of the underlying offense for which the arrest is being made." *Welsh v. Wisconsin*, 466 U.S. at 753, 104 S.Ct. at 2099.

Here, the government has not met its burden. In fact, there simply were no exigent circumstances, of any kind, under any standard. The government put forward only one specific fact to establish exigency: at oral argument, it contended that Shephard's failure to report to his probation officer constituted a ground for warrantless arrest. However, Shephard was not ordered arrested because of his failure to report to his probation officer, but rather for his failure to attend required meetings and his issuance of bad checks. Moreover, the government did not show, and we cannot discern, how any of those three reasons implied that Shephard was a danger to himself or to others, that he would destroy evidence if not immediately

arrested, that he was planning to flee, or that another "consequence improperly frustrating legitimate law enforcement efforts" would occur before a warrant could be issued. *Compare State v. Hammer*, 233 Mont. 101, 759 P.2d 979, 983–84 (1988) (finding exigent circumstances where officers reasonably believed: that the defendant was assaulting the victim, holding her hostage, or both; that the defendant had assaulted the victim in the recent past; and that the defendant possessed a butcher knife, rifle, and ammunition).

Moreover, Shephard's underlying offense—probation violation—is relatively minor. One of the allegations that gave rise to the violation—failure to attend meetings—is also minor, and the other—passing bad checks—is not, by itself, sufficiently grave to constitute an exigency.[15] *Compare State v. Dow*, 256 Mont. 126, 844 P.2d 780, 784 (1992) (rape and robbery); *State v. Hammer, supra* (kidnapping and two felony assaults).

An exigency is an emergency so pressing that a warrant cannot be obtained. Only where police must react immediately may they disregard the warrant requirement. The government has made no showing of any sort of urgency here. It has therefore, *a fortiori*, failed to show that the circumstances were such that the warrant requirement could be disregarded.[16]

### IV.

### A.

Having concluded that Hintz illegally arrested Shephard, we now turn to the question whether the fruit of that illegal arrest—Shephard's gun—must be suppressed. First we note that evidence in a federal prosecution must be suppressed if it was the product of an arrest illegal under state law. *United States v. Mota, supra; see also Henry v.*

for the financial offense that partially underlay the violation or that probable cause existed to arrest him on that basis.

**15.** The terms of Shephard's probation prohibited him from possessing firearms. However, possession of firearms was not a ground for arresting Shephard for violating his probation.

**16.** The government does not contend that the first part of § 46–6–311 is applicable here. It does not suggest that Shephard was committing an offense at the time he was arrested simply because of his status as a probation violator. Any such construction of the statute would in any event conflict with the provisions of § 46–23–1012.

*United States,* 361 U.S. 98, 102–03, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959) (holding that evidence discovered during a search incident to an unlawful arrest is inadmissible).

We next consider the further question whether there is a sufficiently close relationship between the illegal arrest and the seizure to necessitate suppression. The Supreme Court has rejected a "but for" test for determining whether evidence from an illegal arrest must be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). Rather, the inquiry is whether the police obtained the evidence "by exploitation of the illegality." *Id.* We conduct that inquiry by examining the closeness of the link between the illegal arrest and the seizure. In *United States v. Chamberlin,* 644 F.2d 1262 (9th Cir.1980), *cert. denied,* 453 U.S. 914, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981), we held that evidence "*must* be excluded as an exploitation of [an] illegal arrest" whenever its discovery was "brought about *only because* of [the suspect's] illegal detention." *Id.* at 1268 (emphasis added). The closer the link between the illegal arrest and the seizure, the more likely we are to conclude that there is "exploitation" of the arrest by the police.

### B.

Our inquiry is conducted by means of a three-factor test. First, we consider the proximity of the illegal arrest with the seizure of the evidence. Second, we consider whether there were independent intervening events that led the police to the evidence. Third, we consider the effect of suppression on the exclusionary rule's purpose of deterring police misconduct. *See United States v. Jones,* 608 F.2d 386, 391 (9th Cir. 1979). The three factors are closely interrelated.

Applying the three-factor test, we conclude that the seized evidence must be suppressed. The first factor, "proximity," weighs heavily in favor of suppression. Hintz seized the evidence immediately after Shephard's illegal arrest. Within moments of the arrest, Shephard asked for his wallet, and Hintz entered the bedroom and found the gun. It would be difficult to find a case with much greater proximity, except for a search of the person at the moment of the arrest.

Second, there were no independent intervening events that contributed to the deputy's seizure of the gun. Shephard's illegal arrest and Hintz's seizure of the evidence were so closely related, both temporally and otherwise, that they must be treated as a single act. If someone is arrested without his wallet, he will undoubtedly ask for an opportunity to retrieve it before being taken to the police station. Wallets normally contain not only money, which is useful in jail, but identification and other important papers. Here, it was a request to retrieve a wallet that led to the discovery of the evidence. Whether the arrestee asks permission to retrieve the necessary personal property himself, in which case the officer would accompany him and thereby observe the evidence and seize it, or whether the arrestee asks the officer to retrieve the property for him and the officer then seizes the evidence, the result is the same. The officer observes the evidence and seizes it as an inextricable part of the arrest. The same considerations would obtain if the arrestee were outside and dressed in shorts or a bathing suit. He would clearly have the right to go in the house and retrieve his clothes or to ask the arresting officer to do so for him. Either way, the officer's observations of contraband or other evidence while clothes (or a wallet) were being obtained would undoubtedly constitute a part of the arrest and not be the product of intervening events. Accordingly, the "intervening act" factor, like "proximity," weighs heavily in favor of suppression.

Third, the suppression of the gun would deter state officers from routinely making unlawful arrests in the knowledge that an opportunity to view the personal premises or effects of the arrestee will almost inevitably and immediately follow. The record makes clear that state officers in Montana have openly flouted the Montana statute that requires arrest warrants to be in writing. The arrest and seizure in this case was but a single overall act, and that will frequently be the case. If courts do not suppress the seizure of evidence obtained from an arrestee's home at the time of his arrest, law

enforcement officers will have an incentive to make unlawful arrests in the expectation of viewing the arrestee's private premises and personal effects. Accordingly, the "deterrence" prong also weighs strongly in favor of suppression.

In addition, the discovery of the inculpatory evidence here was *not* serendipitous. No wholly unrelated crime was discovered by chance. To the contrary, not only were the arrest and the seizure of the gun inextricably linked, but the crime for which Shephard was ultimately charged is closely related to the grounds for his illegal arrest. Shephard's additional crime (e.g., being a felon in possession of a firearm) was directly linked to his status as a felon.

In sum, all three factors, and more, weigh strongly in favor of suppression. The closeness of the connection between the illegal arrest and the seizure of the evidence mandates that result in this case.

### C.

We conclude that the evidence seized from Shephard's bedroom at the time of his illegal arrest must be suppressed.[17]

### V.

Shephard was arrested in violation of Mont.Code Ann. § 46–23–1012. The case upon which the government relies to establish that the statute need not be followed does not support the government's position. Further, no exigent circumstances existed to justify the arrest under Montana law. Because the illegal arrest and the seizure of the

evidence were closely connected and meet the three-part test for determining "exploitation," the seized evidence, specifically the revolver and the identification, must be suppressed. Shephard's conviction is therefore reversed.

REVERSED and REMANDED.

---

**17.** *United States v. Foppe,* 993 F.2d 1444 (9th Cir.1993), is not to the contrary. In *Foppe,* we characterized the proper inquiry as "whether the illegal activity tends to *significantly direct* the investigation to the evidence in question." *Id.* at 1449 (emphasis added and internal quotes omitted). As we have already demonstrated above, Hintz's illegal arrest of Shephard not only "significantly direct[ed]" Hintz to the inculpatory evidence, but the illegal arrest was *inextricably tied* to the discovery of the evidence.

*United States v. Jones,* 608 F.2d at 386, is also not to the contrary. First, quite some time passed between the illegal detention and the seizure of the *inculpatory evidence* in *Jones*—the police had to locate the motel, drive to the motel, enter the room, obtain permission to search the

room, and discover the gun and jewelry. Second, many independent intervening events occurred between the illegal detention and the seizure of the evidence in *Jones*—the police had to conduct *three additional searches* (a search of the detainee's motel room, a search of the friend's bag, and a search of the friend's car) before it found the inculpatory evidence. Third, the police were not engaging in any conduct related to the crime for which Jones was illegally arrested when they seized the inculpatory evidence—they did not seize the evidence because of an effort to pursue any aspect of the original illegal arrest or the conduct that underlay it. Rather, the officers stumbled across the separate unrelated offense serendipitously.