Garry D. JOHNSON, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–5477, A–5478.

Court of Appeals of Alaska.

June 14, 1996.

David M. Seid, Assistant Public Defender, Ketchikan, and John B. Salemi, Public Defender, Anchorage, for Appellant.

Cynthia M. Hora, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Garry D. Johnson pled no contest to one count of misconduct involving a controlled substance in the third degree, AS 11.71.030(a)(1) (sale of cocaine), and was separately convicted after a nonjury trial of one count of misconduct involving a controlled substance in the fourth degree, AS 11.71.040(a)(2) (possession of marijuana with intent to deliver). Superior Court Judge Thomas M. Jahnke sentenced Johnson to consecutive terms totalling seven years' imprisonment. Johnson appeals, challenging his conviction of fourth-degree controlled substance misconduct on a number of grounds. Johnson also claims that his sentences on both charges are excessive. We affirm.

In April of 1991, Johnson twice sold cocaine to an undercover agent in Ketchikan; one transaction involved 4.4 grams and the other involved 10.5 grams. Shortly thereafter, Johnson also sold approximately two and one-quarter ounces of cocaine to an undercover agent in Oregon.

Johnson was charged in Alaska with two counts of third-degree misconduct involving a controlled substance for the Alaska sales. He was separately charged in Oregon for the sale that occurred there. After being charged, Johnson fled to California to escape prosecution. In 1992, however, he was arrested by federal authorities in California for smuggling more than 53 kilograms of marijuana over the San Diego border from Mexico. In October of 1992, he was convicted in federal court for this offense and received a sentence of one year and one day in prison.

Upon release in 1993, Johnson returned to Oregon to face the outstanding Oregon charge for his 1991 cocaine sale; he was convicted of delivery of a controlled sub-

stance and received two years' probation. Thereafter, Johnson returned to Ketchikan and pled no contest to one of the two still-pending Alaska cocaine sale charges (the one involving 4.4 grams); in return for the plea, the state dismissed the second charge.

Johnson was released pending his sentencing hearing; he lived in the bunkhouse of a resort operated by his sister, near Ketchikan. On June 6, 1993, while Johnson was still awaiting sentencing, the police entered Johnson's bunkhouse and observed drugs in his room. Relying on these observations, they secured the room and obtained a search warrant. Upon executing the warrant, they found one and one-half pounds of marijuana, an ounce of cocaine in plastic baggies, scales, and a shaving cream can with a false bottom filled with various drugs, including cocaine, four small bags of white powder appearing to be cocaine or methamphetamine, and morphine tablets. Johnson was arrested.

The day after the search, Johnson's sister cleaned up the bunkhouse room that Johnson had occupied before his arrest; she found a box containing an additional 6.5 ounces of marijuana. She turned the drugs over to the authorities on June 8.

Several days later, on June 11, 1993, the grand jury indicted Johnson for one count of misconduct involving a controlled substance in the fourth degree. The charge related to the marijuana seized by the police on June 6 pursuant to the search warrant. Johnson was not immediately charged for possessing the marijuana later found by his sister.

Johnson moved to suppress the evidence that had been seized from his room, contending that the initial warrantless police entry of the bunkhouse was unlawful. In October of 1993, Judge Jahnke granted the motion to suppress all evidence the police seized from Johnson's room on June 6. However, Judge Jahnke declined to suppress the marijuana discovered by Johnson's sister on June 8. Finding the discovery of the marijuana by Johnson's sister to be attenuated from the prior unlawful police entry, the judge ruled that the later-discovered marijuana was not a fruit of the initial illegal search.

In response to Judge Jahnke's ruling, the state dismissed the original charge and substituted a charge of misconduct involving a controlled substance in the fourth degree based on the marijuana found by his sister on June 8. Johnson moved to dismiss this charge, alleging a speedy trial violation, as well as improper and insufficient grand jury evidence and failure to present exculpatory evidence. Judge Jahnke denied this motion and, following a nonjury trial, convicted Johnson.

On appeal, Johnson renews many of the arguments he raised below. Johnson argues initially that the marijuana discovered by his sister was inadmissible as the fruit of the preceding illegal search.

■ The exclusionary rule forbids the use of unlawfully seized evidence or its fruits "up to the point at which the connection with the unlawful search becomes 'so attenuated as to dissipate the taint.'" *Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988) (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939)). The test of attenuation is not whether the challenged evidence would have been discovered "but for" the violation. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963). Rather, it is whether derivative evidence "has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Foppe,* 993 F.2d 1444, 1449 (9th Cir.1993) (quoting *Wong Sun,* 371 U.S. at 488, 83 S.Ct. at 417–18 (internal quotation omitted)).

■ Although attenuation must be evaluated on a case-by-case basis, the Ninth Circuit has articulated useful criteria for resolving the issue. In *United States v. Shephard,* 21 F.3d 933, 939 (9th Cir.1994), the court relied on the following three-factor test:

First, we consider the proximity of the illegal [police action] with the seizure of the evidence. Second, we consider whether there were independent intervening events that led the police to the evidence. Third, we consider the effect of suppression on the exclusionary rule's purpose of

deterring police misconduct. These three factors are closely related.

In *Shephard,* the court applied these factors and declined to find attenuation. Shephard was unlawfully arrested in front of his home. *Id.* at 935. He asked one of the arresting officers to retrieve his wallet from inside the house. *Id.* While inside, the officer saw a revolver. *Id.* Shephard was charged with being a felon in possession of a firearm. *Id.* As to the first factor, proximity, the court in *Shephard* pointed out that "[i]t would be difficult to find a case with much greater proximity" between the illegal police activity and seizing the challenged evidence. *Id.* at 939. Turning to the intervening events factor, the court noted that there were none. *Id.* Finally, with regard to the effect of suppression factor, the court stated that "the suppression of the gun would deter state officers from routinely making unlawful arrests in the knowledge that an opportunity to view the personal premises or effects of the arrestee will almost inevitably and immediately follow." *Id.*

Applying the same three-factor test, the Ninth Circuit reached a different result in *United States v. Jones,* 608 F.2d 386 (9th Cir.1979). Jones was illegally arrested on suspicion of burglary; he had a hotel key in his possession. *Id.* at 388. The police went to the hotel room without the key and knocked on the door. *Id.* A person occupying the room answered, told the police that he shared the room with Jones, and consented to a room search. *Id.* The search uncovered evidence linking Jones to a burglary in which he had not previously been a suspect. *Id.*

With reference to the proximity factor, the *Jones* court found the circumstances of Jones' case inconclusive: although the search of the hotel room was to some extent removed from the prior illegal arrest, it was not necessarily so far removed as to be attenuated. *Id.* at 391. By contrast, with reference to the intervening events factor, the court found that although the roommate's consent "was [not] alone sufficient to render the evidence admissible, it is a significant factor especially when considered in the light of the weakness of the initial connection between the arrest and the discovery of the evidence." *Id.* Finally, as to the effect suppression of evidence might have on law enforcement, the court found that "applying the exclusionary rule under these circumstances would have little [deterrent] value." *Id.* For these reasons, the court found attenuation and declined to suppress the evidence of the new burglary.

■ The circumstances of the present case fall far closer to those in *Jones* than to those in *Shephard.* Here, a significant period of time elapsed between the illegal police entry of Johnson's bunkhouse and the discovery of additional marijuana by Johnson's sister. Furthermore, Johnson's sister independently discovered the marijuana and chose to inform the police. The police were in no way involved in that choice; Johnson's assertions to the contrary notwithstanding, the record contains no evidence supporting the conclusion that Johnson's sister acted as a police agent in finding or reporting the marijuana.

Finally, suppressing the marijuana reported by Johnson's sister would serve no meaningful deterrent purpose. Johnson argues that the marijuana discovered by his sister had simply been missed by the police and that a finding of attenuation would in effect reward the police "because they were sloppy during their . . . illegal search." Yet it defies reason to think that police officers conducting searches in questionable or marginal circumstances would attempt to hedge their bets by purposely leaving incriminating evidence behind in the hope that some independent third party might discover and report it.[1]

---

1. Indeed, it seems more realistic to fear that suppression in cases like this might promote, rather than discourage, unlawful police conduct. If evidence reported to the police by an independent third party were automatically suppressed whenever its discovery might not have occurred "but for" a prior unlawful search that was not sufficiently thorough to uncover all hidden contraband, courts would simply teach the police that an officer who risks violating a suspect's rights by undertaking a warrantless search in a close or marginal case should take care to violate those rights thoroughly; restraint would go unrewarded.

The Ninth Circuit test thus supports Judge Jahnke's finding of attenuation. Johnson advances no other persuasive authority or argument in favor of suppression. Accordingly, we find no error in the trial court's refusal to suppress the marijuana reported by Johnson's sister.[2]

■ Johnson argues next that his indictment should have been dismissed because his right to a speedy trial, as guaranteed in Alaska Criminal Rule 45, was violated. Specifically, Johnson cites Rule 45(c)(3), which states that when a new charge arises from the same criminal episode as a previously filed charge, commencement of the speedy-trial period "shall be the same as the commencement date for the original charge." Arguing that his new charge arose from the same criminal episode as his dismissed charges and that periods of time that tolled the speedy-trial rule as to his original charges had no tolling effect on his new charge, Johnson contends that his new charge was already time barred when it was filed.

As the state points out, however, Johnson's argument ignores the supreme court's ruling in *State v. Williams,* 681 P.2d 313, 321 (Alaska 1984), which held:

> An event which suspends the 120–day period for one charge suspends it for all charges arising out of the same conduct, whether or not they have been filed when the event takes place. Any other interpretation would require courts to supervise a complicated system of consents and waivers and force prosecutors to file "pyramid charges."

*Williams* forecloses Johnson's speedy trial argument.

■ Johnson next challenges the sufficiency of the evidence presented to the grand jury. Citing *Marion v. State,* 806 P.2d 857, 859 (Alaska App.1991), for the proposition that mere proximity to contraband cannot establish knowing possession, Johnson claims that the grand jury evidence did not establish his knowing possession of the marijuana discovered by his sister.[3]

Under *Marion,* however, evidence of proximity, though insufficient standing alone, "may nevertheless be combined with other circumstantial evidence to support an inference of knowing possession." *Id.* Here, the grand jury heard evidence establishing that the disputed marijuana had been found, not just in Johnson's physical proximity, but rather in an open box left behind in a room that Johnson had occupied. While occupying the room, Johnson had been overheard talking repeatedly about a "source" named Tom who would be bringing him one and one-half pounds of marijuana on the ferry. Two days before Johnson's sister discovered the marijuana in Johnson's room, Johnson's nephew had gone to the ferry terminal, picked up a disembarking passenger named Tom, and taken Tom to Johnson's bunkhouse; Johnson, meanwhile, had followed his nephew to the ferry terminal and back to the bunkhouse, as if maintaining surveillance.

Viewing the totality of the grand jury evidence in the light most favorable to the state, there was ample basis to support a finding of knowing possession. *Cf. Badoino v. State,* 785 P.2d 39, 42 (Alaska App.1990). Judge Jahnke properly denied Johnson's motion to dismiss the indictment.

■ Johnson lastly challenges his sentences as excessive. Johnson was sentenced simultaneously for both his 1991 cocaine charge and his 1993 marijuana charge. The 1991 cocaine offense, misconduct involving a controlled substance in the third degree, is a

**2.** Relying on his claim that the superior court erred in applying the attenuation doctrine to deny suppression of the marijuana discovered by his sister, Johnson separately maintains that his indictment should have been dismissed because it was based on inadmissible evidence. Our conclusion that Judge Jahnke properly denied Johnson's motion to suppress this evidence disposes of this argument.

**3.** The grand jury must indict a defendant "when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant." Alaska Criminal Rule 6(q). On review, this court must "determine whether the evidence before the grand jury ... 'presented a sufficiently detailed account of criminal activity and the defendant's participation in this activity' to meet this standard." *Marion v. State,* 806 P.2d 857, 859 (Alaska App.1991) (quoting *Taggard v. State,* 500 P.2d 238, 242 (Alaska 1972)).

class B felony punishable by a maximum of ten years' imprisonment and by presumptive terms of four and six years for second and subsequent felony offenders. AS 11.71.030(c); AS 12.55.125(d)(1), (2). Johnson was nominally a first felony offender in 1991 and was therefore not subject to a presumptive sentence for the 1991 offense.

The 1993 marijuana offense, misconduct involving a controlled substance in the fourth degree, is a class C felony punishable by a maximum of five years' imprisonment and by presumptive terms of two and three years for second and subsequent felony offenders. AS 11.71.040(d); AS 12.55.125(e)(1), (2). By virtue of Johnson's 1993 Oregon conviction for selling cocaine, the superior court treated Johnson as a second felony offender on the 1993 marijuana charge.[4]

Judge Jahnke sentenced Johnson to four years on the cocaine charge and three years on the marijuana charge; the judge ordered the sentences to run consecutively, for a composite term of seven years' incarceration. In addition, the judge restricted Johnson's eligibility for discretionary parole.

Johnson challenges his individual sentences, contending that the offenses for which he was convicted involved relatively small quantities of drugs, that he was a first felony offender when he committed the 1991 offense, and that he had made substantial strides toward rehabilitation by the time of his sentencing hearing.

In imposing Johnson's sentences, however, Judge Jahnke expressly found Johnson's case to be exceptional, despite the relatively small amounts of drugs reflected in Johnson's two offenses. Based on Johnson's criminal history and the depth and persistence of his involvement in drug trafficking, Judge Jahnke concluded that Johnson was a worst offender whose prospects for rehabilitation were virtually nil. In relevant part, the judge said:

> Mr. Johnson himself is a most serious offender. If this particular transaction is not a most serious transaction, or these two transactions, and they are not, nevertheless Mr. Johnson, given his record, given his ambition in the past and the ambition that he had in this case, I'm not—I'm convinced this was by no means the last deal that he was going to cut in Ketchikan. He is a most serious offender, he is a worst offender, because he has a long history of this kind of conduct, some of it including very large quantities of drugs. It has been conduct involving different kinds of drugs, marijuana and cocaine, and it is conduct that has gone on for years, and that at this point in time showed no signs of abating.

> He was—at the very time that he was engaging in this conduct in this 1993 transaction he was expressing an intention to become a drug and alcohol counselor, he was basically stringing along the police at this particular time and he didn't know that the police had a line on him.

> His rehabilitative potential is as low as any offender I've encountered. It is low to zero, and that is why rehabilitation is not getting great weight in the Court's sentencing deliberations, it's relegated to third on the list out of three levels.

> My primary goal is individ—my primary goals are individual deterrence and isolation. Mr. Johnson is not going to be deterred unless he is—unless he receives a substantial sentence, and until that sinks in, the public will be in great danger as a result of his activities and he therefore needs to be isolated.

The record supports Judge Jahnke's findings. At the time of sentencing, Johnson was 44 years old. Johnson's employment

---

4. The record indicates that, in the interim between his 1991 and 1993 Alaska charges, Johnson was convicted of both the Oregon cocaine charge and a federal charge of smuggling marijuana from Mexico. The appellate record does not indicate why the federal offense—which resulted in a sentence of more than one year in prison and was thus evidently a felony—was not treated as another prior felony for presumptive sentencing purposes. On appeal, however, the state does not dispute the trial court's conclusion that Johnson was subject to presumptive sentencing as a second felony offender on the 1993 marijuana charge. Our affirmance of Johnson's sentences, which assumes that the superior court was correct in determining Johnson's presumptive sentencing status, makes it unnecessary to resolve this issue.

history is poor. By his own admission, he has spent most of his adult life smuggling and selling drugs. Although nominally a first felony offender at the time of his 1991 cocaine sales, Johnson appears to have been extensively involved in drug trafficking in the Ketchikan area. According to the presentence report, Johnson was first convicted in 1978, in Oregon, for unlawfully possessing marijuana (fifty-one marijuana plants in a greenhouse); he received a five-year term of probation for the offense and subsequently violated the conditions of his probation by absconding to Alaska. In 1982, Johnson was again convicted of (and placed on probation for) unlawful possession of controlled substances in Oregon; at the same time, he was convicted of second-degree theft and criminal possession of rented property.[5]

Thus, although the two 1991 Ketchikan sales for which Johnson was charged involved relatively small quantities of cocaine, they appear to have been the tip of the iceberg. Moreover, the contemporaneous Oregon cocaine transaction (for which Johnson was convicted in March 1993), involved a substantially larger quantity—two and one-half ounces. Shortly after committing the 1991 cocaine sales, Johnson fled to California to avoid prosecution in Alaska and Oregon. In 1992 he was arrested for smuggling more than one hundred pounds of marijuana across the Mexican border to San Diego. Upon conviction, Johnson served a substantial sentence in a federal prison, where he received treatment for substance abuse. Thereafter, he was released on federal probation, went to Oregon and was given probation on that state's 1991 cocaine charge, and returned to Alaska to face his pending charge in Ketchikan. While on release pending sentencing for the 1991 offense, Johnson became involved in the misconduct that led to his 1993 arrest. Although Johnson's activities in 1993 resulted only in his conviction of

the relatively minor offense of possessing marijuana with intent to deliver, the evidence seized by the police from his room establishes that his actual involvement with drug trafficking was far more varied and extensive.[6]

We have twice previously considered sentence appeals in drug cases involving offenders who, like Johnson, committed new offenses while released on pending drug charges. In *Rosa v. State*, 633 P.2d 1027 (Alaska App.1981), Rosa was arrested for possessing with intent to sell slightly less than four ounces of cocaine. While released on bail pending disposition of the case, Rosa sold small quantities of cocaine to an undercover agent and was again arrested. *Id.* at 1032; *Rosa v. State*, 627 P.2d 658, 659 (Alaska App.1981). Although Rosa was a first felony offender with no criminal history or background of alcohol or substance abuse, and although his cases involved relatively small quantities of cocaine, we concluded that his commission of the second offense while released pending disposition of the first justified composite sentences totalling five years to serve. *Rosa*, 633 P.2d at 1032–33; *Rosa*, 627 P.2d at 659–60.

In *Bush v. State*, 678 P.2d 423, 425 (Alaska App.1984), Bush was charged with selling small quantities of cocaine to an undercover agent on two occasions; while released on bail, he again sold a small quantity of cocaine. Later, in advancing an entrapment defense as to the first two charges, Bush perjured himself. *Id.* at 424–25. Upon conviction for the three drug sales and the perjury, Bush, a first felony offender, received composite sentences totalling thirteen years' imprisonment with two years suspended. *Id.* at 425. Two years of the unsuspended portion of the sentence were attributable to the perjury charge, nine years were attributable to the drug charges. In reviewing Bush's sentence on appeal, we noted that Bush's

---

5. In addition, Johnson was convicted in 1989 for unlawfully engaging in commercial fishing activities in Ketchikan.

6. For purposes of sentencing Johnson for his 1991 and 1993 offenses, Judge Jahnke found it permissible to consider the totality of the drugs seized from Johnson's room, including the drugs that the court had suppressed in connection with

prosecution of the original 1993 charges. *See Elson v. State*, 633 P.2d 292, 300–01 (Alaska App.1981), *aff'd*, 659 P.2d 1195 (Alaska 1983) (exclusionary rule ordinarily does not require suppression of illegally seized evidence in a sentencing hearing). Johnson does not dispute this ruling on appeal.

perjury conviction and history of misdemeanors distinguished his case from Rosa's. *Id.* Although we thought Bush's original sentence of eleven years of unsuspended incarceration was excessive, we concluded that a composite term involving eight years to serve—six for the drug charges and two for the perjury—would not be excessive. *Id.* at 426.

The conduct reflected in Johnson's charges is comparable to that involved in *Bush* and *Rosa.* While *Bush* and *Rosa* dealt with offenders convicted of multiple cocaine sales, whereas one of Johnson's charges involved possession of marijuana for sale—a lesser class of felony—this distinction seems insignificant in light of the other controlled substances in Johnson's possession at the time of his 1993 arrest.

Although Johnson's conduct may be comparable to the conduct in *Bush* and *Rosa,* his case distinguishes itself from those cases by virtue of Johnson's exceptionally poor background: his extensive history of substance abuse and drug trafficking, his status as a second felony offender in the 1993 case, his recent service of a substantial sentence of imprisonment on a drug charge, his unsuccessful attempts at rehabilitation in connection with the prior cases, and his demonstrated willingness to commit a new offense while simultaneously released on a pending drug charge and on probation in other drug-related cases.

 In our view, these factors support the sentencing court's characterization of Johnson as a persistent offender whose prospects for rehabilitation are exceptionally poor.[7] These factors likewise support the conclusion that a composite sentence substantially exceeding the composite sentences approved in *Rosa* and *Bush* can be justified in Johnson's case. Johnson's composite term of seven years exceeds by only one year the six years of unsuspended incarceration we deemed permissible in connection with the controlled substance convictions in *Bush.* Having independently reviewed the entire sentencing record, we conclude that the sentences imposed below are not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).[8]

The conviction and sentences are AFFIRMED.

---

7. *See State v. Graybill,* 695 P.2d 725, 729–30 (Alaska 1985). Johnson insists that the sentencing court erred in ignoring uncontroverted evidence indicating that he had made genuine progress toward resolving his longstanding substance abuse problem since his most recent arrest. The sentencing court, however, was not bound to accept Johnson's evidence of rehabilitation, even if it was undisputed. *See Kirby v. State,* 748 P.2d 757, 767 (Alaska App.1987). There is ample evidence in the record to support Judge Jahnke's conclusion that Johnson was manipulative and

that his recent rehabilitative efforts were likely insincere or temporary.

8. Johnson separately argues that Judge Jahnke erred in restricting his eligibility for discretionary parole. However, since Judge Jahnke articulated a reasonable basis for concluding that the parole restriction was necessary, we find no merit to Johnson's claim of error. *See Jackson v. State,* 616 P.2d 23, 25 (Alaska 1980); *Lawrence v. State,* 764 P.2d 318, 321 (Alaska App.1988).