[No. 16671-9-I.  Division One.  February 2, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT C. PLANK, *Defendant,* LESLIE W. KILLION, *Appellant.*

*Nancy L. Talner* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *David C. Cottingham, Deputy,* for respondent.

SCHOLFIELD, C.J.—Leslie Killion appeals his conviction for possession of stolen property in the second degree, arguing that insufficient evidence supported the State's case against him and that prosecutorial misconduct deprived him of a fair trial. We reverse.

## FACTS

Killion and his codefendant, Robert Plank (whose case is not before us in this appeal), arrived at the U. S. Customs Service border checkpoint at Sumas, Washington, in Whatcom County, at approximately 6:30 a.m. on January 12, 1985. They were traveling from British Columbia to Washington in a car which was later reported as stolen.

Customs inspectors Stokes and Hemry questioned Plank and Killion in some detail. Both testified Plank did most of the talking. Plank told Hemry that they had been visiting relatives in White Rock, British Columbia, and that the vehicle belonged to a friend. When asked whether the friend knew he had the vehicle, Plank replied, "I don't know. I guess so." Plank told the inspectors that the car was not stolen.

The inspectors contacted Royal Canadian Mounted Police through the border patrol at Blaine and learned that the vehicle had been reported stolen. The border patrol notified the Sumas police. Officer Sandford of the Sumas police questioned Plank and Killion, after reading them their *Miranda*[1] warnings and obtaining waivers. The story given to Sandford was that the two had met an acquaintance of Plank's the previous night and that this individual loaned them the vehicle to go look for Plank's wife in

---

[1]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Seattle. At trial, Sandford could not remember whether Killion indicated he knew the individual.

Sandford took statements from both of them in which they essentially gave the same facts as outlined above. Killion's statement was not admitted into evidence. Plank's statement was in evidence, and there was testimony that there was very little difference between Plank's statement and Killion's.

The only additional testimony presented by the State was by the owner of the vehicle, who testified that he left the car in front of his house at approximately 10 p.m. on January 11 and discovered that it was missing the next morning, January 12.

Neither Plank nor Killion testified at their joint trial. At the close of the State's case, Killion moved to dismiss for failure to prove a prima facie case, arguing that the State had failed to show actual or constructive possession of the vehicle in him. The trial court denied the motion, holding that evidence from Plank's statement and answers could be used against Killion on the theory that by failing to disagree with Plank, Killion adopted Plank's statements.

In closing argument, defense counsel argued that Killion did not testify because the State failed to prove a prima facie case. In rebuttal to that argument, the prosecutor stated that defense counsel was not under oath and was representing his clients rather than representing justice or the State of Washington or the law. Defense counsel objected, and the objection was sustained. The court told the jury that all attorneys were officers of the court and were sworn to uphold the law.

In addition, the prosecutor repeatedly commented in his argument on Killion's failure to contradict Plank, and suggested to the jury that Killion adopted Plank's statements as his own. Killion was found guilty as charged, and a timely appeal was filed.

## SUFFICIENCY OF THE EVIDENCE

RCW 9A.56.160 reads in pertinent part:

Possessing stolen property in the second degree. (1) A person is guilty of possessing stolen property in the second degree if:

. . .

(d) He possesses a stolen motor vehicle of a value less than one thousand five hundred dollars; . . .

To convict a defendant of possession of stolen property in the second degree, the State must prove that the defendant possessed the property, that the property was in fact stolen, and that the defendant knew the property was stolen.

Possession of property may be either actual or constructive. Actual possession means that the goods are in the personal custody of the person charged with possession; whereas, constructive possession means that the goods are not in actual, physical possession, but that the person charged with possession has dominion and control over the goods.

*State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969).

Since Plank was driving the vehicle at the time of apprehension, the central issue in the trial court was whether there was sufficient evidence to prove constructive possession in Killion. We are aware of no Washington cases finding a defendant in constructive possession of a stolen motor vehicle. There are cases involving constructive possession of other stolen property or contraband.

The State contended in the trial court that possession in Killion could be proven by showing that Killion and Plank were engaged in a common or joint enterprise in driving the allegedly stolen vehicle from Canada into the United States. This argument was based primarily upon the evidence that in the statements and answers given to the law enforcement officers, there was very little if any difference between Plank's version and Killion's. In our view, this evidence fails as proof of the critical issue in this case. That issue is whether there was evidence that Killion had dominion and control over the vehicle. *State v. Callahan, supra* at 29.

In *State v. Callahan, supra,* the drugs were found on a

houseboat. When the search warrant was executed, the defendant was sitting at a desk with another individual and a cigar box filled with various drugs was on the floor between the two men. The defendant admitted that two books on drugs, two guns, and a set of broken scales found on the houseboat belonged to him. He also stated that, while he had been staying on the houseboat for the preceding 2 or 3 days, he was not in the status of a tenant, cotenant, or subtenant. Defendant admitted that he had handled the drugs earlier in the day. The Supreme Court held that this was not sufficient evidence to support a finding of dominion and control.

In *State v. McCaughey,* 14 Wn. App. 326, 541 P.2d 998 (1975), the appellant and a companion lay sleeping several feet from a station wagon parked off a side road and were detained because the plates on the vehicle belonged on another vehicle. An inventory search of the station wagon revealed the presence of stolen property. The court held that the appellant did not have actual physical possession, nor constructive possession of the stolen property, because the only evidence presented was that the appellant had access to the property and was in close proximity. The court held this was not sufficient in the face of the admission by the companion to ownership of the car.

In *State v. Harris,* 14 Wn. App. 414, 542 P.2d 122 (1975), a husband and a wife were convicted for possession of marijuana. The police had a search warrant to search the car and found marijuana in the trunk. The court reversed the wife's conviction, stating at page 417:

> The only evidence tending to prove dominion and control on her part is circumstantial and consists of the fact that she was a passenger in the automobile and the deputy's testimony that he obtained the keys to the trunk from "either Mr. or Mrs. Harris."

The *Harris* court quoted from *State v. Mathews,* 4 Wn. App. 653, 656, 484 P.2d 942 (1971), as follows:

> Whether a passenger's occupancy of a particular part of an automobile would constitute dominion and con-

trol of either the drugs or the area in which they are found *would depend upon the particular facts in each case.* Mere proximity to the drugs is not enough to establish constructive possession—it must be established that the defendant exercised dominion and control over either the drugs or the area in which they were found.

*Harris,* at 417.

Cases from other jurisdictions indicate that most courts are reluctant to find a passenger exerted dominion and control over a stolen vehicle. *See Commonwealth v. Scudder,* 490 Pa. 415, 416 A.2d 1003 (1980); *In re Dulaney,* 74 N.C. App. 587, 328 S.E.2d 904 (1985); *State v. Bartlett,* 77 N.C. App. 747, 336 S.E.2d 100 (1985).

Turning to the evidence in this case, it establishes no more than that Killion was a passenger in an allegedly stolen vehicle driven by Plank. The fact Killion did not contradict Plank's statements to the officers does not logically bear on the issue of dominion or control of the vehicle. The jury could infer Plank and Killion were together earlier in the day of their arrest, but that is not evidence tending to prove constructive possession of the vehicle.

RCW 9A.56.070, commonly referred to as our taking and riding statute, makes it a crime to ride in a motor vehicle knowing it to be stolen. This statute provides a basis for prosecuting passengers in stolen vehicles where possession cannot be shown.

The charge pursued by the State against Killion, possession of stolen property, was not supported by sufficient evidence that a rational trier of fact could have found the essential elements beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). Accordingly, Killion's conviction must be reversed and the case dismissed with prejudice. *State v. Matuszewski,* 30 Wn. App. 714, 637 P.2d 994 (1981).

Having so concluded, it is not necessary that we discuss any other assignment of error raised by Killion.

Reversed and dismissed.

GROSSE and WEBSTER, JJ., concur.