**James Gordon MARION, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2826.**

Court of Appeals of Alaska.

March 1, 1991.

Leslie A. Hiebert, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellant.

Valerie A. VanBrocklin, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, District Court Judge.[*]

OPINION

BRYNER, Chief Judge.

James Gordon Marion was convicted by a jury of possessing cocaine (misconduct in-

---

[*] Entered pursuant to Appellate Rule 214 and Guidelines for Publication of Court of Appeals

Decisions (Court of Appeals Order No. 3).

volving a controlled substance in the fourth degree). On appeal, he challenges the sufficiency of the evidence before the grand jury and at trial. We reverse.

On March 9, 1988, shortly after midnight, Anchorage Police Sergeant Ed Hofkins pulled a car over for running a red light. The stopped car was driven by Robert Baker; James Marion sat in the front passenger's seat. When Hofkins saw two men in the car, he called for a back-up officer. Hofkins then approached the driver's side of the stopped car and asked Baker to identify himself and produce his driver's license.

Baker gave Hofkins a false name and told the officer that he did not have his license with him. As Hofkins radioed for a computer check on the name Baker had given him, he noticed an open gun box in the front seat between Baker and Marion. The box contained some cartridges but no gun. Baker initially claimed that the box was from a toy gun; he then said he did not know where the gun was. Meanwhile, Hofkins received word from his dispatcher that the police had no record of a licensed driver with the name that Baker had given.

As he questioned Baker further, Hofkins noticed Marion place his hand into his jacket pocket, withdraw it, and reach under his seat. Hofkins told Marion to keep his hands in view. Marion replied that he was just looking for a cigarette. A short time later, Marion again reached under the seat. Hofkins repeated his command for Marion to keep his hands in view.

Officer Eddie Campoamor soon arrived to provide Hofkins with back-up. At Hofkins' request, Campoamor approached the passenger's side of the car. Hofkins told Campoamor to be careful, because there was an empty gun box on the seat, and because Marion had "fidgeted with something at his feet. I don't know what's there."

Campoamor directed Marion to step out of the car. Marion complied. After performing a pat-down, Campoamor asked Marion to identify himself. Marion stated his name and provided Campoamor with a valid driver's license.

While Campoamor dealt with Marion, Hofkins removed Baker from the driver's side and inspected the area of the car in which Baker had been seated. On the floorboard of the driver's side, immediately beneath the brake and gas pedals, Hofkins found a .22 caliber pistol and a syringe. Campoamor then inspected the passenger's side of the car. Under the front edge of the passenger's seat, Campoamor found an eyeglass case. Underneath, concealed by the case, was a .22 caliber derringer. Opening the eyeglass case, Campoamor discovered a syringe and three packets containing a white powdered substance. A field test indicated that the substance was cocaine.

The state subsequently indicted Marion for possessing the cocaine found in the eyeglass case.[1] Hofkins did not appear before the grand jury; Campoamor was the only officer who testified. Campoamor described seizing the derringer and eyeglass case and inspecting the contents of the case. Campoamor also testified that Hofkins had told him about seeing Marion reach furtively under the passenger's seat. However, because Hofkins was not present to testify, the prosecutor cautioned the grand jury to consider this testimony only for the purpose of explaining Campoamor's subsequent actions:

> Q. Okay. And very briefly, and I'm gonna elicit one remark from Hofkins through Mr. Campoamor. The reason I'm doing that is I'm not introducing it to prove that it was true or not, but I'm introducing it to show you why Mr. Campoamor did what he did. I.e., why he went under that seat in addition to this reason. What additional comment did Mr.—Sergeant Hofkins make to you

---

1. Based on the derringer found under his seat, Marion, who had a prior conviction, was also indicted for being a felon in possession of a concealable firearm (misconduct involving a weapon in the first degree). Marion was tried separately on the charge, and it was ultimately dismissed after a jury failed to reach a unanimous verdict.

that made you very careful to look under the seat?

A. The passenger seat, I was advised that he had observed the passenger to be placing his hand toward the front bottom of the seat as if he was putting something underneath.

Campoamor went on to testify that laboratory testing had confirmed the powder in the eyeglass case to be cocaine. He further testified that examination of the derringer by police technicians had disclosed no identifiable fingerprints.

The state called one other witness before the grand jury. Sharon Zeller testified that she owned the stopped car and was a long-time friend of Robert Baker. Zeller said she had loaned Baker her car the day before the stop. Zeller also claimed that the pistol found on the driver's side of the car, under Baker's feet, was a gun that she was buying from her aunt. According to Zeller, Baker had agreed to pick up the gun from her aunt and bring it to her. Zeller denied ever having seen the derringer that was found under the passenger's seat, and said she had no idea what it was doing in her car. She also said she had no idea how long Marion had been in the car with Baker, did not know if Marion and Baker were friends, and, in fact, did not even know who Marion was.

Prior to trial, Marion moved to dismiss his indictment, alleging, among other things, that the evidence before the grand jury was insufficient to establish his knowing possession of the cocaine in the concealed eyeglass case. The superior court denied Marion's motion. Marion renews his claim on appeal.

In considering the sufficiency of the evidence before the grand jury, we begin with the standard of proof spelled out in Alaska Criminal Rule 6(q): "The grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant." Our task is to determine whether the evidence before the grand jury in Marion's case "presented a sufficiently detailed account of criminal activity and the defendant's participation in this activity" to

meet this standard. *Taggard v. State,* 500 P.2d 238, 242 (Alaska 1972).

Although Criminal Rule 6(q) demands that the sufficiency of the evidence be determined from "all of the evidence taken together," we may not consider evidence that was improperly presented to the grand jury. Under Criminal Rule 6(r), the grand jury may generally hear only "[e]vidence which would be legally admissible at trial;" in the absence of compelling justification, hearsay evidence is expressly forbidden. *Id.*

■ By far the most convincing grand jury evidence of Marion's knowing possession of cocaine was Campoamor's testimony concerning Marion's furtive movements toward the area under his seat, where the derringer and cocaine were found. This testimony, however, was based on information observed by Hofkins. Recognizing that Hofkins' statements to Campoamor would be inadmissible hearsay if relied on to establish that Marion actually made furtive movements, the prosecutor expressly cautioned the grand jury to rely on this evidence for the limited purpose of explaining Campoamor's actions. On appeal, the state acknowledges the limited admissibility of the evidence and concedes that it cannot be considered to establish that Marion made furtive movements.

■ When Campoamor's testimony concerning Marion's furtive movements is considered solely for its non-hearsay purpose, the remaining grand jury evidence appears to show little more than Marion's proximity to the derringer and eyeglass case that were hidden under his seat. It is well settled that evidence of proximity to contraband cannot in itself establish knowing possession. *See, e.g., United States v. Behanna,* 814 F.2d 1318, 1319 (9th Cir.1987); *United States v. Soto,* 779 F.2d 558, 560 (9th Cir.1986); *United States v. Weaver,* 594 F.2d 1272, 1275 (9th Cir.1979); *State v. Plank,* 46 Wash.App. 728, 731 P.2d 1170, 1172 (1987). Such evidence may nevertheless be combined with other circumstantial evidence to support an inference of knowing possession. *See, e.g., State v. Math-*

*ews,* 4 Wash.App. 653, 484 P.2d 942, 943 (1971).

In Marion's case, however, the grand jury heard virtually no evidence of a nexus between Marion and the articles concealed under his seat apart from the location of those articles within Marion's proximity. No evidence was presented indicating the origin, ownership, or registration of the derringer. The record is equally silent as to the origin and ownership of the eyeglass case. The grand jury was not even apprised whether Marion wore eyeglasses when he was arrested. Marion was not shown to be in possession of or involved with other drugs or firearms at or near the time of this incident. Other than his furtive gestures toward the area under the seat, Marion apparently engaged in no suspicious conduct during the traffic stop, and he evidently gave no statements tending to incriminate himself.

While the testimony of the car's owner, Sharon Zeller, established that the derringer and eyeglass case were not hers, her disclaimer of ownership gives rise to no inference of knowledge on Marion's part. Zeller's car had been out of her possession since the day before the stop. Moreover, since Zeller testified that she had no idea how or when the derringer and eyeglass case came to be in her car, there is nothing to establish that those articles were not already in the car when she loaned it to Baker. The circumstances surrounding Marion's presence in the car are as obscure as the circumstances surrounding the presence of the eyeglass case and the derringer. Zeller was unacquainted with Marion, did not know how long he had been in her car with Baker, and had no idea why he was there.

Despite the paucity of evidence, the state argues that Marion's knowledge and ownership of the articles concealed beneath his seat can be deduced from the fact that another gun and a syringe were found on the driver's side of the car under Baker's feet. Zeller's testimony linked those articles to Baker. The state maintains that, from this, it would be reasonable to infer that the gun and drugs hidden on the passenger side of the car belonged to Marion. The flaw in the state's argument, however, is its intrinsic circularity: the reasonableness of the inference that Marion owned the derringer and drugs under his seat depends entirely on the threshold assumption that Marion and Baker both had drugs and guns before they were stopped—an assumption which, as to Marion, is wholly unsupported by evidence apart from the location of the drugs and derringer under his seat.

Under circumstances similar to those of the present case, the Alaska Supreme Court has held that a defendant's mere presence in a car containing drugs is insufficient to establish a *prima facie* case of knowing possession. *See Egner v. State,* 495 P.2d 1272 (Alaska 1972). In our view, *Egner* compels the conclusion that the evidence presented to the grand jury against Marion would not have warranted his conviction at trial. We thus hold that the superior court erred in denying Marion's motion to dismiss the indictment.[2]

The conviction is REVERSED.

2. Our reversal on this ground makes it necessary to consider only one of the other issues that Marion has raised on appeal. Marion has challenged the sufficiency of the evidence at his trial. We must address this issue because retrial would be impermissible if the state failed to present sufficient evidence at Marion's first trial. Having reviewed the record, we find that the state presented sufficient evidence of guilt at trial. In contrast to the grand jury hearing, Officer Hofkins testified at trial and personally described Marion's furtive movements toward the area under his seat. Considering this testimony and other evidence in the light most favorable to the state, we are satisfied that fair-minded persons exercising reasonable judgment could have concluded that the state met its burden of proving guilt beyond a reasonable doubt. *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981). Accordingly, the trial court did not err in denying Marion's motion for a judgment of acquittal.