FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 8: 41

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43328-1-II |
| Respondent, | |
| v. | |
| BRENTEN K. HOESCH, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — Brenten K. Hoesch appeals his conviction of possessing heroin, arguing that the trial court erred in denying his motion to suppress and that there was insufficient evidence to support his conviction. Because the officers did not exceed the scope of a lawful investigative stop by asking Hoesch to step out of a parked car, and because the evidence was sufficient to show that he possessed the heroin found in the car, we affirm.

## FACTS

During the afternoon of June 27, 2011, Officer Justin Taylor received a call from Karen Cook. She reported that her husband, Richard Cook, had seen two men "shooting up" in the back parking lot of a Kalama truck stop. Clerk's Papers (CP) at 34. When Taylor arrived at the truck stop, Richard Cook contacted him and pointed at a blue Hyundai Sonata. He explained that "those guys are shooting up" and demonstrated putting a syringe into his arm. CP at 34. The Hyundai was parked at the back of the truck stop where people did not typically park.

Officer Taylor parked his unmarked patrol car behind the Hyundai and approached it in uniform. When he was approximately 10 feet from the vehicle, the driver saw him in the mirror, immediately put his chin down, and started to scramble and make furtive movements toward the center console and the area next to his seat. Hoesch, the passenger, was also moving around as Taylor approached.

Because he was concerned that the Hyundai's occupants might have a weapon and because he was outnumbered, Officer Taylor asked the driver to put his hands on the steering wheel and told Hoesch to put his hands on the dashboard. The driver denied hiding anything and said nothing was going on. While Taylor was speaking with the driver, Hoesch repeatedly took his right hand off the dashboard and reached down toward the floorboard.

Concerned about the driver's nervous conduct, Officer Taylor had the driver step out of the car. As Taylor spoke with the driver, Hoesch reached down with his right hand three more times despite being told to keep his hands on the dashboard.

Officer Taylor was concerned for his safety because Hoesch kept removing his hand from the dashboard and reaching down, and he ordered Hoesch out of the car and had him place his hands on its roof. Taylor also called for backup. Hoesch stepped out with one shoe off and with his sock pulled down to his toes. Taylor knew by training and experience that some drug users inject drugs into their feet.

Hoesch stepped out of the car cautiously because he had an eyeglass case on his foot. It appeared to Officer Taylor that he was careful not to kick the case open. Taylor did not know what the case contained, but he did know that some drug users keep their drug kits in eyeglass cases. Neither the driver nor Hoesch appeared to be under the influence of drugs, but when they

2

were out of the car, they looked around and appeared nervous. Their behavior made Taylor nervous and concerned for his safety.

Officer Dustin Palmquist responded to the scene as a cover officer. He spoke with Hoesch and noticed that Hoesch had smudged blood on his bare foot and three spots of blood that appeared to be caused by needle holes. Hoesch also had blood on his hands. He could not explain why he was bleeding but said he was in the process of changing his shoes. Palmquist did a patdown of Hoesch and handcuffed him after feeling a round object in his back pocket that Hoesch could not identify.

From outside the vehicle, Officer Palmquist saw an unzipped backpack containing several syringes on the passenger side floorboard. He could not see whether the syringes had been used or contained anything.

After the driver denied consent to search the car and a drug dog proved unavailable, Officer Taylor secured the vehicle with evidence tape in anticipation of a search warrant. While taping the vehicle, he looked in the front windshield and saw a loaded syringe on the passenger floorboard. During the execution of the search warrant, Taylor recovered the syringe from the passenger floorboard, and subsequent lab tests showed that it contained heroin.

After the State charged Hoesch with possession of heroin, he filed a motion to suppress, arguing that all evidence resulting from his unlawful seizure should be suppressed because the officer exceeded the scope of a valid investigatory stop when he ordered him from the car. Officers Taylor and Palmquist testified during the suppression hearing. The trial court denied the motion to suppress and entered findings reflecting the facts set out above. The court concluded initially that the information provided by Richard Cook was sufficient to justify the stop and initial detention. The court concluded further that even if Hoesch's removal from the

3

car was improper, and the officer's observations about Hoesch after removing him were stricken from the search warrant, there was sufficient justification for the warrant based on Richard Cook's report of seeing the occupants shooting up and the officers' observations of the syringes in the backpack and on the floorboard.

Hoesch then submitted to a bench trial on stipulated facts which included the findings from the suppression hearing and the additional finding that Officer Taylor found a syringe loaded with heroin in the vehicle. Hoesch argued that the evidence was insufficient to prove him guilty of constructive possession, but the trial court disagreed based on the stipulated facts that Officer Palmquist had seen smeared blood and needle holes on Hoesch's foot as well as blood on his hands that Hoesch could not explain. The court found Hoesch guilty as charged and imposed a 15-day sentence.

## DISCUSSION

SCOPE OF INVESTIGATIVE STOP

Hoesch first challenges the trial court's order denying his motion to suppress. He does not assign error to the findings of fact supporting that denial, so they are verities on appeal. *State v. Horrace*, 144 Wn.2d 386, 391, 28 P.3d 753 (2001). We review de novo the conclusions of law in an order denying a motion to suppress. *Horrace*, 144 Wn.2d at 392.

An officer may conduct an investigative seizure or *Terry*[1] stop based on less evidence than needed for probable cause to make an arrest when the officer has a reasonable suspicion, grounded in specific and articulable facts, that the person detained has been or is about to be involved in a crime. *State v. Day*, 161 Wn.2d 889, 896-97, 168 P.3d 1265 (2007); *State v. Acrey*, 148 Wn.2d 738, 746-47, 64 P.3d 594 (2003). "'A founded suspicion is all that is necessary,

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*some basis from which the court can determine that the detention was not arbitrary or harassing.'"* *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966)). A *Terry* stop must be "limited in scope and duration to fulfilling the investigative purpose of the stop." *Acrey*, 148 Wn.2d at 747. The investigative methods employed must be the least intrusive means reasonably available to effectuate the purpose of the detention. *State v. Williams*, 102 Wn.2d 733, 738, 689 P.2d 1065 (1984). If the officer's initial suspicions are confirmed or further aroused, the scope of the stop may be extended and its duration may be prolonged. *Acrey*, 148 Wn.2d at 747. The court must consider all of the circumstances in evaluating the reasonableness of the detention. *Acrey*, 148 Wn.2d at 747; *State v. Bonds*, 174 Wn. App. 553, 565, 299 P.3d 663 (2013).

Hoesch does not challenge Officer Taylor's initial action in approaching the car to investigate Richard Cook's information about seeing the occupants "shooting up" and in asking Hoesch to put his hands on the dashboard. Hoesch argues, however, that when Taylor did not immediately see drug paraphernalia and did not detect that he or the driver was under the influence of drugs, his further detention was unlawful. Hoesch argues that our analysis in this matter should be guided by *State v. Tijerina*, 61 Wn. App. 626, 811 P.2d 241, *review denied*, 118 Wn.2d 1007 (1991), and *State v. Cantrell*, 70 Wn. App. 340, 853 P.2d 479 (1993), *aff'd on other grounds*, 124 Wn.2d 183, 875 P.2d 1208 (1994).

In *Tijerina*, officers stopped the defendant's car for a traffic violation and then, after seeing bars of soap in the glove box and noticing that the defendant and his passenger were Hispanic, asked for permission to search the car. 61 Wn. App. at 628. Division Three of this court observed that once the officer decided not to issue a traffic citation and returned the defendant's license and registration, any further detention had to be based on articulable facts

5

from which the officer could reasonably suspect criminal activity. *Tijerina*, 61 Wn. App. at 629. The presence of motel soap in a car driven by Hispanics, and the fact that Hispanics in the area were known to engage in drug trafficking in motels, was not sufficient to create a reasonable suspicion that the defendant was engaged in criminal activity. *Tijerina*, 61 Wn. App. at 629. Similarly, in *Cantrell*, the officer's initial stop of the defendant's car for a traffic infraction was justified, but after issuing the defendant a speeding ticket, the officer had no justification for asking to search the car for containers of alcohol. 70 Wn. App. at 344.

The facts here are distinguishable from those in *Tijerina* and *Cantrell*. Officer Taylor approached the parked car to investigate a citizen's report of having observed a felony: the occupants were "shooting up" (injecting) drugs. Officer Taylor first asked the driver to put his hands on the steering wheel and Hoesch to put his hands on the dashboard after seeing the men moving around as he approached the car and being concerned that they might have a weapon. While Taylor was speaking with the driver, Hoesch kept reaching down toward the floorboard with his right hand despite being told to keep his hands on the dashboard. Taylor was alone at the time and was concerned for his safety. Taylor removed Hoesch from the car and had him put his hands on the roof.

While not assigning error to the finding that Officer Taylor was concerned for his safety, Hoesch argues that the officer had no objectively reasonable rationale for that concern. *See State v. Mendez*, 137 Wn.2d 208, 224, 970 P.2d 722 (1999) (rejecting officer's assertion of risk where there was no suspicion that passenger had engaged in criminal conduct and no concern about his actions in reaching inside his clothing), *abrogated on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

We disagree; a suspect's reaction to the police helps determine the reasonableness of an officer's actions during a *Terry* stop. *See Belieu*, 112 Wn.2d at 600. The scope of a lawful investigatory stop is not exceeded simply because an officer orders the suspect out of a car. *State v. Watkins*, 76 Wn. App. 726, 729, 887 P.2d 492 (1995); *State v. Thornton*, 41 Wn. App. 506, 512, 705 P.2d 271, *review denied*, 104 Wn.2d 1022 (1985). In *Watkins*, the officers did not exceed the scope of a lawful *Terry* stop by ordering the defendant from a car because they had valid concerns about their safety after seeing him lean forward as if to place something under the seat. 76 Wn. App. at 728, 730.

We are reluctant to substitute our judgment for that of police officers in the field in assessing whether their fear for their personal safety when confronting unknown persons during an investigatory stop is sufficiently justified. *Belieu*, 112 Wn.2d at 600. During the stop at issue, Hoesch kept making furtive movements with his hand despite Officer Taylor's requests for him to keep both hands on the dashboard. Taylor was the only officer present, and he was concerned about the reactions of both the driver and Hoesch. We hold that there was sufficient justification for the officer's concern, and we reject Hoesch's contention that ordering him from the car rendered the duration of the stop excessive. We affirm the trial court's order denying the motion to suppress.

SUFFICIENCY OF THE EVIDENCE

Hoesch next contends that the evidence was insufficient to support his conviction for possessing heroin because there was no proof that he constructively possessed it.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of

insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Possession can be actual or constructive. Actual possession means that the goods are in the personal custody of the person charged with possession. *State v. Plank*, 46 Wn. App. 728, 731, 731 P.2d 1170 (1987). Constructive possession is established if there is substantial evidence from which the trier of fact can reasonably infer that the defendant had dominion and control over the item. *State v. Jeffrey*, 77 Wn. App. 222, 227, 889 P.2d 956 (1995). Dominion and control need not be exclusive to establish constructive possession, but close proximity alone is insufficient; other facts must enable the trier of fact to infer dominion and control. *See, e.g.*, *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008); *State v. Turner*, 103 Wn. App. 515, 521-22, 13 P.3d 234 (2000).

Having upheld the trial court's suppression ruling, we may consider what Officer Palmquist observed after ordering Hoesch from the car, as set forth in finding of fact 13:

> Officer Palmquist responded to the scene as a cover officer. He spoke with [Hoesch] and saw he had blood that appeared to be smudged on his bare foot, and three spots of blood that appeared to be caused by needle holes. [Hoesch] also had blood on his hands. [Hoesch] said he did not know why he was bleeding and that he was in the process of changing his shoes.

CP at 35.

These facts, combined with the discovery of the syringe loaded with heroin on the passenger floorboard of the car, are more than sufficient to establish Hoesch's dominion and control over the loaded syringe and to support the trial court's conclusion that he was in constructive possession of heroin.

No. 43328-1-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, J.

We concur:

HUNT, P.J.

MAXA, J.

9