IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32197-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIN E. MCGOVERN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — After a traffic stop of a car, in which Erin McGovern rode as a

passenger, McGovern refused law enforcement consent to search her purse. After

obtaining a search warrant for the car, an officer searched the purse and discovered

unlawful drugs and another's identification. Erin McGovern appeals her convictions for

three counts of possession of controlled substances and one count of possessing another's

identification. She argues that law enforcement lacked reason to stop the car, the State

violated her trial rights when its witness commented that she refused to consent to a

search, and insufficient evidence supports her convictions. We disagree and affirm all

convictions.

FACTS

On June 19, 2012, Spokane County Sheriff Deputy Nathan Bohanek and Corporal

Justin Elliott, in their role on a criminal interdiction team, traveled eastbound on Interstate 90. The duo surveilled the highway for criminal activity, particularly transportation of drugs and weapons, and for persons wanted on warrants. Eventually the officers followed a white 1985 BMW and established the speed of the BMW to be 75 miles per hour. The posted speed limit was 70. The officers stopped the car. When stopping the BMW, the officers noticed the windows to be illegally tinted.

Deputy Nathan Bohanek approached the BMW and asked the driver, Kerry Gracier, who owned the car. Erin McGovern, a passenger in the front seat of the car, answered that the car belonged to Victor Antoine. Antoine was not the registered owner, nor was he in the car. Kerry Gracier had a suspended license, so the officers asked her to exit the vehicle to investigate whether she legally possessed the car. Gracier complied and verbally consented to a search of the BMW.

Deputy Nathan Bohanek and Corporal Justin Elliott pulled Erin McGovern and another passenger from the BMW and frisked them for weapons. McGovern and Deputy Bohanek disagree as to what occurred once McGovern exited the BMW. Bohanek maintains neither Justin Elliot nor he handcuffed any of the three car occupants. McGovern asserts that the officers moved her from the front of the car to the rear of the car and handcuffed her, because the officers claimed she incessantly moved her feet and she told the officers that they could not search her possessions inside the car. According

2

to McGovern, the officers insisted they had not arrested her, although she remained handcuffed.

During a search of the BMW, Bohanek found a credit card of someone not in the vehicle; a bag in the back seat containing two laptop computers, which Erin McGovern claimed as hers; and two purses in the front passenger seat, which McGovern also identified as her purses. Deputy Bohanek asked McGovern's permission to search the bag and purses, and she refused. Bohanek searched the trunk and found a backpack, to which all vehicle occupants denied ownership. Bohanek opened the backpack and found a digital scale with methamphetamine residue on its surface. He last searched the unlocked glove box and found another digital scale with methamphetamine residue and a wallet with identification and credit cards belonging to Victor Antoine and Tyson Andrew.

After speaking with his superior officer, Deputy Nathan Bohanek orchestrated a tow of the BMW so he could garner a search warrant for other objects in the car. He did not allow Erin McGovern to retrieve her purses and laptop bag from the car before its towing. Bohanek and Corporal Justin Elliott cited the driver for driving with a suspended license, speeding, and an illegal window tint. The two officers also cited the other passenger for an open container of alcohol in the back seat of the vehicle. Erin McGovern received no citation.

3

On June 21, 2012, Deputy Nathan Bohanek obtained a warrant to search the BMW and its contents. Upon opening one of the purses claimed by Erin McGovern, Bohanek found a small metal cylinder which contained a white crystalline residue. The white residue tested positive for methamphetamine. Bohanek also found two tins with over 200 legend drugs and narcotic pills in the purse. Finally, Bohanek found in the purse a credit card bearing the name Kristopher White and a Washington State driver's license belonging to Brendan W. Cassida. Bohanek called Cassida and verified that McGovern lacked his permission to possess his driver's license.

## PROCEDURE

The State of Washington charged Erin McGovern with three counts of possession of a controlled substance and one count of possession of another's identification. McGovern moved under CrR 3.6 to suppress evidence obtained in the search of the vehicle. She argued, among other contentions, that the traffic stop leading to the search was pretextual.

The trial court entertained the motion to suppress and heard testimony from Erin McGovern. The trial court ruled in favor of the State. The court entered written findings of fact, which included the following finding:

> III. The vehicle was stopped for traveling five miles per hour over the posted speed limit and was not pretextual.

Clerk's Papers (CP) at 89.

4

During trial, the State questioned Deputy Bohanek regarding the bags, including the purses, found in the BMW:

Q. Okay. So you asked about the ownership of the bags?
A. I did.
Q. What were you told?
A. Ms. McGovern identified the bag as being hers.
Q. Did she say anything else?
A. She did not want me to search the bag.

Report of Proceedings at 96. After this colloquy, Erin McGovern moved for a mistrial, arguing that the government violated her constitutional rights by telling the jury that she asserted her rights. The trial court denied the motion, but allowed McGovern to present a curative instruction to the jury. That instruction read:

> You have heard testimony that the defendant exercised her rights to require a search warrant under the 4th amendment of the United States constitution and the constitution of the State of Washington article 1 section 7. You are to infer no guilt upon the defendant's exercise of these rights nor are you to consider this testimony during your deliberations.

CP at 124.

At the close of the State's case, Erin McGovern moved to dismiss all charges against her based on insufficient evidence. McGovern argued that the State failed to show that Deputy Nathan Bohanek found drugs in a purse over which she claimed ownership. She also asserted that the State presented insufficient evidence for a jury to find she knowingly possessed another's identification. The trial court denied the motion. The trial court reasoned that McGovern's arguments regarding the lack of nexus between

5

her and the purse went to weight and not to its sufficiency. The court also determined that the State provided sufficient evidence for a jury to infer that McGovern knowingly possessed the identification because it was found in a purse to which she claimed ownership.

A jury found Erin McGovern guilty of all charges. The trial court convicted and sentenced McGovern to thirty days' confinement.

## LAW AND ANALYSIS

### *Traffic Stop*

Erin McGovern first contends that the trial court erred in denying her CrR 3.6 motion to suppress evidence obtained in the search of the 1985 BMW. McGovern asks this court to ignore the driver's consent to search the vehicle, because the officers' initial stop of the car for speeding was pretextual. She emphasizes the fact that Deputy Nathan Bohanek and Corporal Justin Elliot served on an interdiction team, thereby following cars on the highway and gazing for drugs, weapons and persons wanted on warrants. According to McGovern, the officers lacked cause to stop the BMW because they observed no drugs or weapons and had no knowledge that the driver lacked a license.

We must first address whether Erin McGovern sufficiently assigned error to the trial court's findings of fact, and, if not, the ramifications of the lack of a proper assignment. In her opening brief, McGovern assigned error to none of the trial court's findings. In her opening brief's argument, she does not criticize any of the trial court's

findings. In her reply brief, Erin McGovern wrote:

> Appellant does assign error to the court's factual findings in the CrR 3.6 hearing.

Reply Br. of App. at 3. McGovern's haphazard assignment of error does not suffice.

RAP 10.3(g) provides in relevant part:

> A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

A general assignment of error to the findings of fact is insufficient under the rule. *State v. Roggenkamp*, 115 Wn. App. 927, 943, 64 P.3d 92 (2003). When the assignments of error to the court's findings of fact do not comply with RAP 10.3(g), the trial court's findings become the established facts of the case. *State v. Arreola*, 176 Wn.2d 284, 288, 290 P.3d 983 (2012); *State v. Roggenkamp*, 115 Wn. App. at 943.

In this appeal, we accept the trial court's findings as accurate, but this acceptance does not end our review. The ultimate determination of whether those facts constitute a violation of the constitution is one of law and is reviewed de novo. *State v. Harrington*, 167 Wn.2d 656, 662, 222 P.3d 92 (2009); *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008). The constitutionality of a warrantless stop is a question of law we review de novo. *State v. Gatewood*, 163 Wn.2d at 539.

We review the traffic stop of the 1985 BMW only under Washington law, since

7

state law affords an accused greater protection. As a general rule, warrantless searches and seizures are per se unreasonable, in violation of article I, section 7 of the Washington State Constitution. *State v. Duncan*, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). Washington recognizes at least six narrow exceptions to the warrant requirement: consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and *Terry* investigative stops. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). The State bears the burden of demonstrating that a warrantless seizure falls into a narrow exception to the rule. *State v. Doughty*, 170 Wn.2d 57, 61, 239 P.3d 573 (2010).

Whether pretextual or not, a traffic stop is a "seizure" for the purpose of constitutional analysis. *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). Warrantless traffic stops are constitutional under article I, section 7 as investigative stops, but only if based on a reasonable articulable suspicion of either criminal activity or a traffic infraction, and only if reasonably limited in scope. *State v. Arreola*, 176 Wn.2d at 292-93 (2012); *State v. Ladson*, 138 Wn.2d at 350. The narrow exception to the warrant requirement for investigative stops has been extended beyond criminal activity to the investigation of traffic infractions because of the law enforcement exigency created by the ready mobility of vehicles and governmental interests in ensuring safe travel, as evidenced in the broad regulation of most forms of transportation. *Arreola*, 176 Wn.2d at 293; *State v. Johnson,* 128 Wn.2d 431, 454, 909 P.2d 293 (1996).

Purely pretextual traffic stops are unconstitutional. *Ladson*, 138 Wn.2d at 358. A

pretextual traffic stop occurs when a police officer relies on some legal authorization as a

mere pretext to dispense with a warrant when the true reason for the seizure is not exempt

from the warrant requirement. *Ladson*, 138 Wn.2d at 358. To determine whether a

traffic stop is pretextual, Washington courts evaluate the totality of the circumstances,

including both the subjective intent of the officer as well as the objective reasonableness

of the officer's behavior. *Ladson*, 138 Wn.2d at 358-59.

The trial court found that the law enforcement officers' stop of the 1985 BMW

was not pretextual, but the result of speeding. Because Erin McGovern failed to object to

this finding of fact, we could end our analysis here. We recognize, however, that Deputy

Nathan Bohanek and Corporal Justin Elliott may have also been motivated, when halting

the BMW, by their principal goal of interdicting drug and weapon traffickers. Assuming

we determined the pair to be stimulated by this additional goal, we still would affirm the

trial court. The officers would then have had mixed motivations, and mixed motives does

not preclude the traffic stop.

Our Supreme Court for the first time addressed a mixed motivation stop in *State v.*

*Arreola*, 176 Wn.2d 284 (2012). The court held:

> A mixed-motive stop does not violate article I, section 7 so long as
> the police officer making the stop exercises discretion appropriately. Thus,
> if a police officer makes an independent and conscious determination that a
> traffic stop to address a suspected traffic infraction is reasonably necessary
> in furtherance of traffic safety and the general welfare, the stop is not

9

pretextual. That remains true even if the legitimate reason for the stop is secondary and the officer is motivated primarily by a hunch or some other reason that is insufficient to justify a stop. In such a case, the legitimate ground is an independent cause of the stop and privacy is justifiably disturbed due to the need to enforce traffic regulations, as determined by an appropriate exercise of police discretion. Any additional reason or motivation of the officer does not affect privacy in such a case, nor does it interfere with the underlying exercise of police discretion because the officer would have stopped the vehicle regardless. The trial court should consider the presence of an illegitimate reason or motivation when determining whether the officer really stopped the vehicle for a legitimate and independent reason (and thus would have conducted the traffic stop regardless). But a police officer cannot and should not be expected to simply ignore the fact that an appropriate and reasonably necessary traffic stop might also advance a related and more important police investigation. [*State v.*] *Nichols*, 161 Wn.2d [1,] 11, 162 P.3d 1122 [2007] ("'[E]ven patrol officers whose suspicions have been aroused may still enforce the traffic code ....'" (quoting *State v. Minh Hoang*, 101 Wn. App. 732, 742, 6 P.3d 602 (2000))[)]. In such a case, an officer's motivation to remain observant and potentially advance a related investigation does not taint the legitimate basis for the stop so long as discretion is appropriately exercised and the scope of the stop remains reasonably limited based on its lawful justification.

*Arreola*, 176 Wn.2d at 298-99.

*State v. Arreola* is both controlling and analogous. In *Arreola*, a Mattawa police officer responded to a report of a possible drunk driver. The officer followed the allegedly intoxicated driver, but observed no signs of impaired driving. The officer, nevertheless, stopped the driver because of his car's illegally altered exhaust system. On approaching the car, the officer smelled alcohol and saw open containers in the vehicle. Our Supreme Court affirmed a trial court ruling upholding the traffic stop. Because the trial court's unchallenged finding was that the altered exhaust was the actual reason for

the Mattawa police officer's stop, the stop itself was not pretextual.

As part of a crime interdiction team patrolling Interstate 90, Deputy Nathan Bohanek and Corporal Justin Elliot sought suspects engaged in activities other than speeding. Nevertheless, the BMW exceeded the speed limit. Common wisdom may be that one is free to exceed the speed limit up to five miles per hour. Nevertheless, driving 75 m.p.h. in a 70 m.p.h. zone remains a traffic infraction. The law enforcement officers' ulterior motive of stopping individuals transporting drugs or driving with a suspended license, assuming such motives existed, does not negate the validity of the stop.

*Testimony of Denial of Consent*

Erin McGovern contends the trial court erred in denying her motion for a mistrial that she forwarded when the State elicited trial testimony from Deputy Nathan Bohanek that indicated McGovern refused consent to search her possessions. McGovern argues that the testimony impermissibly used her refusal as evidence of guilt. McGovern maintains the curative jury instruction did not, and could not, correct the error. The State promotes the admissibility of Deputy Bohanek's testimony as evidence behind the issuance of the warrant to search the BMW and not as substantive evidence of McGovern's guilt. The State further contends that the trial court's curative instruction cured any error and alleviated any harm to McGovern. We do not address whether the testimony of Nathan Bohanek was admissible, because we otherwise find no error in the trial court's denial of the motion for a mistrial.

11

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be tried fairly. *State v. Mak*, 105 Wn.2d 692, 701, 718 P.2d 407 (1986), *overruled on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). Only errors affecting the outcome of the trial will be deemed prejudicial. *Mak*, 105 Wn.2d at 701. A constitutional error is harmless if the appellate court is assured beyond a reasonable doubt that the jury verdict is unattributable to the error. *State v. Anderson*, 171 Wn.2d 764, 770, 254 P.3d 815 (2011). This court employs the "overwhelming untainted evidence" test and looks to the untainted evidence to determine if it is so overwhelming that it necessarily leads to a finding of guilt. *Anderson*, 171 Wn.2d at 770 (internal quotation marks omitted).

Erin McGovern is correct that a criminal defendant's assertion of her constitutional right to refuse a warrantless search cannot be used as evidence of her guilt. *State v. Jones*, 168 Wn.2d 713, 725, 230 P.3d 576 (2010); *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008); *State v. Gauthier*, 174 Wn. App. 257, 267, 298 P.3d 126 (2013). Use of the evidence for this purpose amounts to manifest constitutional error. *United States v. Prescott*, 581 F.2d 1343, 1351 (9th Cir. 1978); *State v. Jones*, 168 Wn.2d at 725; *State v. Burke*, 163 Wn.2d at 217. Nevertheless, a mere reference to such an assertion does not always amount to a constitutional violation requiring reversal. Reversal requires

12

the State to have invited the jury to infer guilt from the invocation of the right. *Burke*, 163 Wn.2d at 217.

Three decisions shed light on how the State invites the jury to infer guilt and what measures the trial court should exercise under such circumstances. In *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978), the court considered an appeal by Saundra Prescott, convicted as an accessory after the fact to mail fraud committed by her neighbor. Prescott allowed the neighbor to hide in her house while law enforcement officers raided his apartment across the hall. After finding the neighbor's apartment empty, the agents knocked on Prescott's door. Prescott refused to open the door and denied knowing or harboring her neighbor. Prescott asked the agents if they had a warrant to search her apartment, and, when they said they did not, she continued to refuse them entry. The agents battered Prescott's door, entered the apartment, and found the neighbor with his fraudulently obtained parcels.

In *United States v. Prescott*, the district court judge denied Saundra Prescott the opportunity to argue that her refusal to consent to a warrantless search of her apartment could not be considered as evidence of guilt. The trial court also refused a curative instruction to the jury similar to that used in Erin McGovern's case. In reversing and remanding the conviction, the Ninth Circuit held that the trial court erred in allowing the government to use Prescott's refusal to consent to a warrantless search as evidence of the crime charged.

13

In *State v. Gauthier*, 174 Wn. App. 257 (2013), this court reversed Thomas Gauthier's conviction for second degree rape and held that the trial court erred in allowing the State to present evidence of Gauthier's refusal to submit to a warrantless DNA test as evidence of his guilt. Gauthier's defense counsel mentioned the refusal during his closing argument, and the State responded, in rebuttal, that Gauthier's refusal was consistent with the actions of a guilty person.

In *State v. Burke*, 163 Wn.2d 204 (2008), our Supreme Court reversed Justin Burke's conviction for third degree rape of a child. The court held that the State impermissibly introduced Burke's refusal to speak with police as evidence of his guilt. The State stressed Burke's assertion of the Fifth Amendment privilege in its opening and closing arguments, direct examination of investigating officers, and cross-examination of Burke. Our high court found that the trial court abused its discretion by allowing the State to present such evidence and provide such an argument.

We distinguish our appeal from the trial events in *United States v. Prescott*, *State v. Gauthier*, and *State v. Burke*. The State of Washington below uttered a short reference to Erin McGovern's refusal to consent to the search of her bags and purportedly offered the evidence for the purpose of explaining the reason officers sought a search warrant. The State did not mention McGovern's refusal to consent in its opening or closing argument. In addition, the trial court submitted a curative instruction, crafted by McGovern, to the jury. The other overwhelming untainted evidence presented by the

14

State, as explained below, was sufficient on its own to support a finding of guilt. For these reasons, we hold the trial court did not abuse its discretion in denying McGovern's motion for a mistrial.

## *Sufficient Evidence to Convict*

Erin McGovern contends that insufficient evidence supports her four convictions. She argues that the State failed to provide sufficient evidence to prove the mens rea element of her charge for possessing another's identification. She maintains that the State presented insufficient evidence that she possessed the drugs found in bags she claimed as her own. We disagree.

When a defendant challenges the sufficiency of the evidence underlying her conviction, she admits the truth of the State's evidence and all inferences that reasonably may be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). This court views the evidence in the light most favorable to the State and asks whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220, 616 P.2d 628 (1980). The reviewing court considers circumstantial evidence equally reliable as direct evidence. *State v. Myers*, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997); *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). The trier of fact judges the credibility of witnesses, and issues of credibility cannot be reviewed on appeal. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

15

Possession of controlled substances: RCW 69.50.4013(1) provides:

It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter.

The jury found Erin McGovern thrice offended this statute by possessing methamphetamine, Xanax, and Ritalin.

When reviewing the evidence in a glow most favorable to the State, a jury could have reasonably found the essential elements of these crimes beyond a reasonable doubt. Erin McGovern claimed that the bags in which officers found the drugs and her personal identification. *See State v. Edwards*, 5 Wn. App. 852, 855, 490 P.2d 1337 (1971). The jury heard no evidence that McGovern obtained a valid prescription for the medications. A jury could reasonably infer from this evidence that McGovern possessed the drugs in question.

Possession of another's identification: RCW 9A.56.330 provides, in relevant part:

(1) A person is guilty of possession of another's identification if the person knowingly possesses personal identification bearing another person's identity, when the person possessing the personal identification does not have the other person's permission to possess it, and when the possession does not amount to a violation of RCW 9.35.020.
(2) This section does not apply to:
(a) A person who obtains, by means other than theft, another person's personal identification for the sole purpose of misrepresenting his or her age;
(b) A person engaged in a lawful business who obtains another person's personal identification in the ordinary course of business;

16

(c) A person who finds another person's lost personal identification, does not intend to deprive the other person of the personal identification or to use it to commit a crime, and takes reasonably prompt steps to return it to its owner; and

(d) A law enforcement agency that produces or displays counterfeit credit or debit cards, checks or other payment instruments, or personal identification for investigative or educational purposes.

Again, in the light most favorable to the State, the evidence presented supports the jury's finding of guilt. Officers discovered Brendan Cassida's identification and credit card in one of the bags to which Erin McGovern claimed ownership. The State provided evidence that Cassida had not given McGovern permission to possess his identification, and McGovern presented no evidence that she fell under one of the exceptions listed in section 2 of RCW 9A.56.330.

McGovern argues that the State failed to present sufficient evidence of the "mens rea" element of this charge, the element being knowingly possessing Cassida's identification. *See State v. Thompson*, 68 Wn.2d 536, 540-41, 413 P.2d 951 (1966); *State v. Plank*, 46 Wn. App. 728, 731, 731 P.2d 1170 (1987). While she is correct that the State lacked direct evidence in support of this element, the jury is entitled to reasonably infer McGovern's knowing possession from the circumstances surrounding the discovery of Cassida's identification. *See State v. Tembruell*, 50 Wn.2d 456, 457-58, 312 P.2d 809 (1957). As with the other charges, the trial court did not err in submitting McGovern's charge for possession of another's identification to the jury.

CONCLUSION

We affirm all convictions against Erin McGovern.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.

18