# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59370-0-II |
| Respondent, | |
| v. | |
| IVAN V. FELTSAN, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Police found a stolen car in a grocery store parking lot. Ivan V. Feltsan approached the officers, asked what they were doing near his car, and said that he had driven the car to the store. After police detained and handcuffed him, Feltsan said his friend "G" owned and drove the car, but Feltsan also explained that the car's ignition was damaged and it could be started with any key. The State charged Feltsan with possession of a stolen vehicle and a jury convicted him.

Feltsan appeals, arguing that there was insufficient evidence to convict him of possession of a stolen vehicle because the State failed to prove he possessed the car or knew the car was stolen. We affirm.

## FACTS

### I. BACKGROUND

In late 2022, a woman's car was stolen from her apartment parking lot. The owner had both sets of keys for the car, and the car had both front and rear license plates and an undamaged ignition before it was stolen.

One night in February 2023, two police officers found the car in a grocery store parking lot. The car had no license plates and the ignition had been "punched in," meaning that it had been forced into the steering column so that someone could start the car "with a screwdriver or any type of vehicle key." Verbatim Rep. of Proc. (VRP) at 227-28. A Latino man in a blue shirt got out of the backseat and went into the grocery store.

Upon checking the vehicle identification number against a police database, the officers learned that the car had been reported stolen. The car's registration had been cancelled when it was reported stolen. Instead, the car had "what appeared to be a 3-day trip permit" displayed on the rear windshield, but officers could not read the permit because of the tint on the windshield. VRP at 228.

After confirming that the car was stolen, one officer went to retrieve the man who had been in the backseat from the grocery store. As the officer crossed the parking lot, Feltsan—who is White—approached the officer and said "something to the effect of, 'Hey, what are you doing around my vehicle?'" VRP at 198. Feltsan then walked with the officer to the car. When the other officer asked Feltsan if he had driven the car to the store, Feltsan answered, "Yeah." Ex., 2A at 30 sec., to 35 sec. The officers then arrested and handcuffed Feltsan. Later, they retrieved the other man from inside the store.

One of the officers interviewed Feltsan in the back of a police cruiser. Feltsan stated that the car belonged to his friend "G," and that G had driven the car while Feltsan and the man from the backseat were passengers. VRP at 242. Feltsan stated that G was a Native American male who had fled on foot. And he said that G had bought the car "on OfferUp about a month ago." VRP at

243. Feltsan also said that G had lost the car's key, but the ignition was broken so he could start the car with any key, even though he had to reach into the hole in the steering column to do so.

The State charged Feltsan with unlawful possession of a stolen vehicle.

## II. TRIAL

During trial, the State's witnesses testified consistent with the facts above. The jury also saw body camera footage. One police officer testified that trip permits, such as the one displayed on the car, were frequently and easily forged and posted on stolen vehicles. He also stated that people who steal cars can punch in the ignition if they "take a screwdriver, a flathead most commonly, and pound it into the ignition and force access to the cylinder so that they can freely turn it with a screwdriver" or any key. VRP at 228.

The jury saw body camera footage of the officers' conversation with Feltsan, where he said he was the driver of the car. Moreover, an officer testified that when they searched the car, they found a phone and passport that did not belong to Feltsan, the man from the backseat, or the car's owner. This officer stated that stolen vehicles frequently have other people's identification documents and belongings in them because the thieves use the vehicles to commit other crimes. No keys, title, registration, bill of sale, or license plates were found in the car. On cross-examination, both officers acknowledged that they never observed Feltsan in or near the car before they arrested him. And police did not review any security footage that showed who drove the car to the grocery store.

The jury instructions stated that to convict Feltsan of possession of a stolen vehicle, the jury had to find that he "knowingly possessed a stolen motor vehicle," that he "acted with

3

knowledge that the motor vehicle had been stolen," and that he "withheld or appropriated the motor vehicle to the use of someone other than the true owner." Clerk's Papers at 24.

The jury convicted Feltsan of unlawful possession of a stolen vehicle. The trial court sentenced Feltsan to seven days in jail. Feltsan appeals.

ANALYSIS

Feltsan argues that there was insufficient evidence to convict him of unlawful possession of a stolen vehicle. Specifically, he argues that the State failed to prove that he "knowingly possessed a stolen motor vehicle or that he knew the vehicle was stolen." Br. of Appellant at 6. Feltsan reasons that his admission that he drove the car does not mean that he had possession of the car or knew that it was stolen. We disagree.

There is sufficient evidence to support a conviction if, taking the State's evidence as true and viewing the evidence in a light most favorable to the State, any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt. *State v. Dreewes*, 192 Wn.2d 812, 821, 432 P.3d 795 (2019). Circumstantial evidence is as reliable as direct evidence. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019). And we defer to the fact finder's resolution of conflicting testimony and evaluation of the evidence's persuasiveness. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

It is illegal to knowingly possess a stolen vehicle. RCW 9A.56.068. A person possesses stolen property if they knowingly "receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen" and "withhold or appropriate the same to the use of any person other than the true owner," regardless of whether they are the person who stole the property in the first place. RCW 9A.56.140(1). And a person acts knowingly when they are "aware of a fact, facts,

4

or circumstances or result" or have "information [that] would lead a reasonable person in the same situation to believe that facts exist" that are "described by a statute defining an offense." RCW 9A.08.010(1)(b)(i)-(ii).

In general, "possession of recently stolen property in connection with other evidence tending to show guilt is sufficient." *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). Although a *passenger* may not have constructive possession of a vehicle, a *driver* has actual possession of the vehicle. *State v. Plank*, 46 Wn. App. 728, 731-33, 731 P.2d 1170 (1987).

Here, an officer testified that Feltsan asked police what they were doing near his car and answered affirmatively when asked if he had driven the car to the store. This was evidence that Feltsan had actual possession of the car. *Plank*, 46 Wn. App. at 731. Although Feltsan changed his story after being handcuffed to say that G drove and owned the car, we defer to the jury's resolution of conflicting evidence. *Homan*, 181 Wn.2d at 106.

Additionally, Feltsan knew that the ignition was damaged and that the car could be started without the original key. The jury heard testimony that damage like that done to the car's ignition allows people to easily steal vehicles. The jury also heard testimony that no keys, registration, bill of sale, title, or other evidence of ownership was found in the car, and that car thieves frequently forge short-term trip permits like the one displayed in the back window. Taking the State's evidence as true and drawing all inferences in the light most favorable to the State, this was circumstantial evidence that a reasonable jury could rely on to find that Feltsan knew that the car was stolen. *Dreewes*, 192 Wn.2d at 821; *Scanlan*, 193 Wn.2d at 770. In sum, there was sufficient evidence to convict Feltsan of possession of a stolen vehicle.

No. 59370-0-II

CONCLUSION

We affirm Feltsan's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

LEE, J.

VELJACIC, A.C.J.

6